## ALEXANDRIA, ETC., R. CO., (HAY v.)

[See Hay v. Alexandria, etc., R. Co., Case No. 6,254.]

---

## ALEXANDRIA WATER CO., (AVIL v.)

[See Avil v. Alexandria Water Co., Case No. 679.]

---

## Case No. 188.
### ALFONSO v. UNITED STATES.
[2 Story, 421.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1843.

EVIDENCE — EXPERT TESTIMONY — COMPETENCY — ESTOPPEL—CUSTOMS DUTIES.

1. Where, in a writ of error, exception was taken to the admission by the judge of the testimony of merchants and appraisers in Boston, in respect to the market value of sugars in Cuba, it was held, that the market value being a question of opinion, as well as of fact, such testimony was admissible, as being in the

---
[1][Reported by William W. Story, Esq.]

nature of evidence by experts, and of the same degree as the evidence of merchants in Cuba.
[Cited in Chaffee v. U. S., 18 Wall. (85 U. S.) 542: U. S. v. 146,650 Clapboards, Case No. 15,935.]

2. Exception being, also, taken to the admission of certain evidence, as to prior fraudulent shipments to other parties, made by B., the shipper of the sugar for the claimants, the judge refused to affirm, that the evidence was improperly admitted.
[Cited in U. S. v. 146,650 Clapboards, Case No. 15,935.]

3. Exception being, also, taken to the admission of other invoices of shipments in July and August, (this shipment being made in May,) to show the market value of sugar, it was held that they were properly admitted.
[Cited in U. S. v. 146,650 Clapboards, Case No. 15,935.]

4. The phrase "actual cost" in the revenue act of 1799, c. 128, [1 Stat. 677,] means the actual price paid in a bona fide purchase, and not the market value.
[Cited in U. S. v. Twenty-Six Cases Rubber Boots, Case No. 16,571; U. S. v. 150 Bales of Unwashed Wool, Case No. 15,932b.]

5. Where a bill alleged that certain sugars were fraudulently invoiced at a sum less than "their actual cost and fair market value," which question was directly put in issue by the pleadings, and the judge charged the jury, "that if the goods were found to be invoiced below their fair market value, with intent to defraud, &c., they should find a verdict for the government," to which instruction exception was taken by the plaintiff, it was held that the instruction was proper.

6. Held, also, that the agent of the claimants, having assumed, in his oath to the invoice or entry of the shipment, the position of a purchaser, he could not avail himself of the defence that he was not a purchaser, but a producer or manufacturer.
[Cited in Locke v. U. S., Case No. 8,442.]

7. It seems, that the revenue act of 1799, c. 28, only applies to cases where an actual purchase has been made.
[Cited in U. S. v. Twenty-Six Cases Rubber Boots, Case No. 16.571: U. S. v. Auffmordt, 7 Sup. Ct. Rep. 1184, 122 U. S. 204; 19 Fed. Rep. 894.]

[8. Cited in Greely v. Thompson, 10 How. (51 U. S.) 237, in support of the proposition that the appraisement should be as of the time of the exportation of the goods to this country.]

[Error to the district court of the United States for the district of Massachusetts.]

[At law. Libel of seizure for forfeiture of certain sugar, (Gonzalo Alfonso, claimant.) Judgment of forfeiture to United States. Claimant appeals.]

Writ of error to a judgment rendered in the district court. The original suit was a libel of seizure of 100 boxes of sugar for an alleged forfeiture under the 66th section of the revenue act of 1799, c. 128, [3 Bioren & D. Laws, 198, 1 Stat. 677,] because "the actual cost of the said sugars at the place of export was not, nor was the fair market value thereof the said sum of three reals for each arroba, (at which they were invoiced,) but that the said sugars were so invoiced falsely and fraudulently, and with a design to evade a part of the duties, payable thereon to the United States, and that the actual cost, or fair market value, of the said sugars at the place of export was a

much larger sum, to wit, the sum of four reals and a half for each arroba;" contrary to the statute, &c. The claimant, in his plea and answer, averred, that "the said merchandise was not imported contrary to law, and because," he says, "that the actual cost and fair market value of the same at the place of export, was the sum of three reals for each arroba, and no more, and that the said merchandise was not invoiced at that rate falsely and fraudulently, and with design to evade the payment of a part of the duties payable thereon to the United States, as in the said libel is alleged." The replication puts the matter of the plea and answer in issue, denying their truth. The cause was heard by a jury, who found a verdict for the United States. At the trial, a bill of exceptions was taken by the claimant, which was as follows: "The libellants offered to prove by the testimony of appraisers of the custom house and merchants resident in Boston, engaged in the importation and sale of sugars, and who derived their knowledge on the subject from letters and invoices received by themselves in the usual course of their business, and from inspection of the sugars in question, or samples of them, and from their general knowledge of the business, what was the market value of these sugars in Matanzas at the time of exportation. The claimant objected to the competency of this evidence, there being in the case the deposition of witnesses, taken by the claimants, resident in Matanzas at the time of exportation, as to the market value of these sugars; but the objection was over-ruled and the evidence admitted. The government, in order to show a design to defraud in the present case, offered to prove by the appraisers, that, on one former occasion, they thought an invoice of sugars shipped by one Burnham, by whom this lot was also shipped in behalf of the claimant, and by whom it was invoiced, to be rated below the market value: though no information of such opinion was given to the importer or exporter; and that, on one other occasion, said appraisers had put up an invoice, sent by the same person, believing the same to be rated too low, and the consignee had paid the advance, without making any objection; it not appearing, in either case, that the claimant was interested therein, or had any knowledge thereof. The claimant objected to this evidence as incompetent, but the objection was over-ruled and the evidence admitted. The government, in order to show that these sugars were invoiced below the market value at the time of exportation, which was in April, offered invoices of sugar, some of which were shipped in July and August, it being in evidence that the market fluctuated, and what was the extent of such fluctuation according to the demand and supply. The claimant objected to this evidence, but the objection was over-ruled and the evidence admitted. On the whole evidence, it appeared that these sug-

ars were the produce of a plantation belonging to the claimant, in the island of Cuba, and sent by him to this country for sale: no evidence was offered to show what was the actual cost, and thereupon the claimant prayed the court to instruct the jury that the statute on which this information was founded did not apply to articles belonging to the producer or manufacturer, so as to render them liable to forfeiture if invoiced below the market value; or, at least, not unless it was also proved that the actual cost to the producer or manufacturer was higher than the valuation of the invoice. But the learned judge refused so to instruct the jury, and instructed them that if they believed the goods to be invoiced below their fair market value, with intent to defraud, &c., they should find a verdict for the government." Judgment having been rendered for the United States, a writ of error was brought by the claimant, and was argued at the present term.

Francis. C. Loring, for claimant.

Franklin Dexter, Dist. Atty., for the United States.

Before STORY, Circuit Justice, and SPRAGUE, District Judge.

STORY, Circuit Justice. I cannot but regret that the revenue laws have not undergone a thorough revision and consolidation since the act of 1799, c. 128, [3 Bioren & D. Laws, 198; 1 Stat. 677,] so as to cure the numerous defects, and supply the obvious omissions (not to speak of the repugnances of the later legislation), which experience has demonstrated to exist in that act. Instead of a plain and uniform statute to regulate this whole matter, we are now driven to an examination of numerous laws, which have been since passed upon the same subject, the provisions of which are not always easily reconcilable with each other, and which present almost endless embarrassments and questions, in their actual application. It is a matter of surprise, that congress should have left this whole system in such an imperfect state, after the experience of nearly a half century has shown its inadequacy, and have rested satisfied with occasional amendatory laws, which have covered a few blots only, and introduced many new controversies as to their true interpretation and extent. The court, however, must act upon the system as it is, with a consciousness, however, that, in many cases, it is obliged to rely upon a measuring cast of opinion, without being able to resolve many difficulties to its own entire satisfaction.

I shall consider the objections, in the order in which they stand in the bill of exceptions, as at once natural and convenient, premising, however, that upon the state of the pleadings, the true issue before the jury was, whether the sugars in question were in-

voiced at the port of export, according to their "actual cost and fair market value," to wit, three reals and no more, without any design falsely and fraudulently to evade the payment of the proper duties. The issue was not, whether they were invoiced according to their "actual cost" alone, but according to their "actual cost and true market value," coupling them together, and using them apparently as equivalent expressions. This is a most important consideration to be borne in mind in examining the argument, which has been addressed to the court, upon the charge of the district judge, and to which I shall have occasion hereafter to refer. The first exception is to the admission of the evidence of the appraisers, and of merchants in Boston engaged in the importation and sale of sugars, as to the market price thereof at the port of export. The objection seems to be founded upon this, that it is, (1) not the best evidence that the nature of the case admits of; (2) that it is mere hearsay. But it appears to me, that the objection is not supportable, upon either ground. In the first place, the market value is necessarily a matter of opinion, as well as of fact, or rather of opinion gathered from facts. How are we to arrive at it? Certainly not by the mere purchase made by a single person, or by purchases made by a few persons; for in either case, they may have purchased above or below the market price, or the market price may be fluctuating, and the sales too few to justify any general conclusion. Buyers may refuse to buy at a particular price; sellers may refuse to sell at a lower price. In this state of things, we must necessarily resort to opinions of merchants and others, conversant in trade, for their opinions, what, under all the circumstances, is the fair market price or value of the goods. The market price or value, therefore, must in most cases, if not in all, be a matter of fact mixed up with opinion, for it must necessarily include a general price or value in the market, deducible from various averages, and approximations, and the different qualities of the same class of goods. In the next place, the knowledge of the market price being thus, at least in part, a matter of skill, judgment, and opinion, it is in no just sense mere hearsay; but it is in the nature of the evidence of experts. If the evidence of merchants at the port of export might be taken in the case, because of their actual experience and information, that of merchants and appraisers having equal means of knowledge or information from their actual trade and business, would be equally evidence. Each is evidence in the same degree, and not the one secondary to the other, even if each were not intrinsically of equal value under all circumstances. Indeed, I can conceive of cases where the evidence of Boston appraisers, or Boston merchants, might be of higher value in the estimate of a jury,

than that of any foreign merchants at the port of export, from the nature or importance of the case, or different interests of the witnesses. This objection, therefore, is not sustainable. And the same answer may be given to the second objection, which supposes that the testimony of witnesses at Matanzas as to the market value was of a higher degree than that of witnesses in Boston. It might weigh more or less with a jury, according to circumstances, than the testimony of the Boston witnesses. But the evidence would not be higher in its nature, character, or degree, in a technical sense. It might have more or less weight; but that would not degrade it to an inferior class of evidence.

The next objection is to the admission of the evidence of the appraisers, as to prior shipments by Burnham (the shipper of these sugars for the claimant), and of invoices accompanying the same, being, in their judgment, invoiced below the market value, the other shipments not belonging to the claimant, nor he being shown to have any knowledge thereof. I confess, that I have felt some difficulty upon this point; and I should have been glad that the original bill of lading of the present shipment, and the invoice thereof, and the entry thereof at the custom house, had been put into the case, so that it might have been shown, in what precise manner the bill of lading and invoice were made out; whether Burnham appeared thereon solely as the shipper, or whether it was added, that the shipment was on account and risk of the claimant, and also what the entry and oath administered on the occasion purported to state. As I understand the case, however, Burnham made out the invoice as the agent of the claimant in the shipment; and, therefore, the invoice value of the sugars must be understood as the value put upon the same, with the full assent of the claimant, as the actual cost to him. We must then, as it seems to me, treat Burnham as the general agent of the claimant in this matter. And the question comes shortly to this, whether an agent employed in other transactions of a similar nature for other persons, whose conduct is open to suspicion, as to his readiness to co-operate in a fraudulent evasion of duties in those cases, may not, in the claimant's case, be equally open to the like suspicion, so as to let in his conduct as in some degree affecting the bona fides of his invoice for the claimant. I confess that the fact, per se, would not alone have much weight; but, combined with other circumstances, inflaming the suspicion of fraud, I am not entirely satisfied that it was not admissible in evidence, although the claimant is not shown to be directly privy to it. Suppose the argument at the bar to be urged, that the agent ought to be deemed as acting bona fide, for as a mere agent, he could have no motive to deceive or aid in a fraud, would not the ar-

gument be met and overturned by showing, that no scruple of this sort had been seen in his prior shipments? Without, therefore, saying that I feel free from all doubt on this point, I cannot affirm that there was error in the learned judge in admitting the evidence, valere quantum valere possit.

The next objection is to the admission of the evidence of other invoices of shipments in July and August, 1842, (the present shipment having been made in the preceding May,) in order (as I understand it) to show the market value, at those times, of like sugars at the port of export. I see no reason to exclude this evidence; although it would not and ought not ordinarily to be decisive as to the market value in May. There may be fluctuations in the market during the intervening period between May and August; and, indeed, there was evidence (it seems) in this case to show, that such fluctuations actually existed. Still, however, upon a question of market value—a subject, in its nature, somewhat indeterminate, and of opinion—it appears to me, that evidence of this sort is admissible, as affording the means of approximation to the true market value at the time. Its weight would depend upon other circumstances, which might enhance or diminish it.

Having disposed of these minor questions, we come, in the last place, to the main question in the case, which is as to the ruling of the learned judge in refusing the instruction prayed for on behalf of the claimant, and the actual instruction given by him to the jury, "that if they found the goods to be invoiced below their fair market value, with intent to defraud, &c. they should find a verdict for the government." Now, upon the actual issue before the jury, the real question was, whether the sugars were invoiced at their actual cost and fair market value; and I do not, therefore, well see how the learned judge could otherwise have instructed the jury on that point. The main objection that exists is to the instruction prayed and refused by the court. And this involves several important considerations. In the first place, as to the construction of the 66th section of the revenue act of 1799, c. 128. I adhere to the doctrine laid down in the cases cited at the bar, U. S. v. Sixteen Packages of Goods, [Case No. 16,303,] and Tappan v. U. S., [Id. 13,749,] that "actual cost" in that section means the actual price paid for the goods by the party in the case of a real bona fide purchase, and not merely the market value of the goods. But then the market value may be and often is justly resorted to as a means of ascertaining the actual cost in doubtful and suspicious cases, for it may be fairly presumed, in ordinary cases, that the market value, and no more, and no less, is generally given for the commodity. The terms, however, are not identical in their meaning, nor is the one necessarily the true interpretation of the other.

It is observable in the present case, that, in the pleadings and issue, the parties have used the words as exact equivalents, and treated the fair market value as the actual cost, and the actual cost as the fair market value.

In the next place it must be taken also, upon the pleadings and evidence, as a clear concession, that the goods were invoiced at their actual cost and fair market value by the shipper, the agent of the claimant, with the consent of his principal; and thus he has placed himself in the invoice and entry, in the predicament of a purchaser, and not in that of a producer or manufacturer of the article. If the invoice and entry purport to state the actual cost, or the market value of the sugars, as a purchase, is it competent in point of law for the claimant now to set up a different case, and to avail himself of the defence, that he was not a purchaser, but a producer or manufacturer? Now, in this view, it is most important to consider that the act of the 1st of March, 1823, c. 149, has in that section prescribed the different oaths to be taken in the entry by the consignee or importer, or agent, and by the owner of the goods, and also by the manufacturer or owner, who has not purchased the goods,[2] when he enters the same. Where the goods are entered by the consignee or importer, or agent, he is required to swear that the invoice exhibits the actual cost, if purchased, or the fair market value if otherwise obtained. Where the owner enters the goods, he is to swear to their actual cost, including all charges; and where the manufacturer or owner, who has not purchased the goods, enters the same, he is to swear that the invoice contains a just and faithful valuation thereof, at the fair market value. Now, as the invoice and entry, in the present case, are not before me, I cannot say which of these oaths was taken by the consignee. But, regularly, it ought to have been, and, therefore, I presume it was, that the invoice exhibited the actual cost, if purchased, or the fair market value, if otherwise obtained. If the consignee made the entry, referring to the invoice of the sugars, as exhibiting their actual cost, then it seems to me, that he cannot now be permitted to make a different case for the claimant, and insist, that it was no purchase, but a manufacture by the claimant. In the next place, the instruction asked and denied, requires the court to ascertain and decide, that the sugars in controversy were the produce of a plantation belonging to the claimant in the island of Cuba, and sent by him to this country for sale. Now, the court had no right to assume this, unless it was admitted on the part of the United States; and although stated in the exception, there is no admission, and no evidence of the fact on the record.

---

[2] See, also, act of 14th July, 1832, c. 224, § 15, [chapter 227, 4 Stat. 593.]

In the next place, it may be true, that the 66th section of the act of 1799, c. 128, in that part which declares, that if goods are not invoiced according to the actual cost, with design to evade the duties, then only they shall be forfeited, does not apply to cases, where the goods belong to the producer or manufacturer, and are invoiced below the market value, if that market value be not below the actual cost; and yet upon an issue like the present, the court might not be bound to give that instruction, as not being relevant to that issue. Indeed, with reference to such an issue, the point might be purely an abstract point. But what could seem to be decisive is, that it is plain, that such an instruction could not be asked of the court, unless the claimant could show, that by his invoice and entry, he put his case upon the allegation, that the valuation was the fair market value of the goods, and did not put it upon the ground that the valuation was the actual cost of the goods. I very much incline to hold the opinion, that the 66th section of the act of 1799, c. 128, so far as it inflicts a forfeiture, does not apply, except to cases where an actual purchase has been made, and of course where the invoice ought to be of the actual cost upon such purchase. Still, however, I do not decide the point, because in my view of the present case, it is not fairly presented upon the pleadings and evidence, in such a manner as to call upon the court to decide it. In this view of the whole matter, my opinion is, that the learned judge was right in refusing the instruction in the terms and under the circumstances in which it was prayed. The judgment of the district court is, therefore, affirmed, with costs.