SMITH & MELTON *v.* THE N. C. RAILROAD COMPANY.

The contents of a writing, which if it ever existed, has been lost or destroyed, and which cannot be found after diligent search, may be proved by parol.

What an agent says in the course of doing an act in the scope of his agency, characterizing or qualifying the act is admissible as part of the *res gestæ.* But if his right to act in the particular matter in question has ceased, his declarations are mere heresay, which do not affect the principal.

The power to make declarations or admissions in behalf of a company as to events or defaults that have occurred and are past, cannot be inferred as incidental to the duties of a general agent to superintend the current dealings and business of the company.

To establish the weight of 19 bales of cotton burned on defendant's Railroad, it is competent for a witness to state the average weight of the lot of 33 bales, of which the burned bales were a portion, and thus fix the weight of the 19 bales by approximation.

There is an exception to the general rule against heresay evidence, by which a matter of general interest to a considerable class of the public, may be proved by reputation among that class : *Therefore,* It is competent for a witness to state the price of cotton, from information received through commercial circulars, prices current and correspondence and telegrams from his factor.

The by-laws of a corporation are not evidence for it against strangers who deal with it, unless brought home to their knowledge and assented to by them.

(*Williams* v. *Williamson,* 6 Ired. 281; *Howard* v. *Stutts,* 6 Jones, 372; *State Bank* v. *Wilson,* 1 Dev. 485; *Morgan* v. *Purnell,* 4 Hawks, 95; *Moffit* v. *Witherspoon,* 10 Ired. 185 , *State* v. *Cochrane,* 2 Dev. 63; *Toole* v. *Peterson,* 9 Ired. 180, cited and approved.)

CIVIL ACTION, tried before *Moore, J.,* at the July (Special) Term, 1871, of the Superior Court of MECKLENBURG county.

The plaintiffs sued the defendants, before the change in our system of pleadings, in CASE, declaring against the

Company as a common carrier for an overcharge of freight, and for the non-delivery of nineteen bales of cotton which were put upon the defendant's road.

In support of the declaration, one of the plaintiffs, G. W. Melton, testified, that about May 22, 1866, he shipped a lot of cotton belonging to the firm, (the plaintiffs,) from Chester, S. C., consigned to Hopkins, Dwight & Trowbridge, in New York City. At this point, the witness was asked by defendants, if he had not taken a shipping receipt for the cotton; he stated that he did not know whether he had or not, but that if he had, such receipt had been lost or destroyed, as he had made diligent search and could not find it. The defendants objected to his speaking of the shipment of the cotton without producing it. His Honor overruled the objection, and the witness stated that he shipped 33 bales, of which the cotton in controversy was a part, from Chester, S. C., by way of Charlotte over the defendants' road. Defendants excepted.

It was in evidence, that at the time of the plaintiff's contract with Ghio, hereinafter alluded to, one Wilkes was superintendent of the defendants' road; that he continued as such during the year 1866, and that he is still alive. It was further in evidence, that during the whole of that time, he, Wilkes, had authority from the President and Directors of the road, to arrange and alter the tariff of freights and generally to make all other contracts with shippers over the road, but it was not shown that such authority was in writing. It was proposed to prove by the said Melton, the declarations of Wilkes made to him with reference to the loss of the cotton, while superintendent in 1866. This evidence was objected to by the defendants, but admitted by the Court. The plaintiff, Melton, thereupon testified, that Wilkes declared to him, that the " Inland Air Line," being a combination of Railways (of which the defendants' was one) and Steamships, from Chester, S. C., to New York, had

been established before the 22d day of May, 1866; that after the cotton was burned, but during the year 1866, Wilkes further stated to him, that the cotton had been received by the defendants, and was burned at Harrisburg station on their road ; that he informed Wilkes of the terms of the contract with Ghio, that Wilkes said that Ghio had authority to make the contract, but refused to pay on account of fire release, remarking however, he was bound by the terms of any contract which he had made with Ghio.

This witness also testified, that he weighed all the cotton himself; that he could not give the exact weight of each bale ; that the bales varied but little in weight from each other ; that he could tell the average weight by calculation, and knew the aggregate of the whole lot shipped, a part only of which was burned, viz.: nineteen bales. The Court allowed the witness to state the average weight by calculation, and the defendants excepted.

The witness being asked to state the price of cotton in New York at the time this shipment would have arrived there, stated, that he knew the price there at that time only by accounts of sale rendered him by his commission merchants on which he drew the money to his credit; by his telegrams, circulars and correspondence. This was objected to by defendants, but admitted by the Court. Defendents excepted.

It was admitted, that if the plaintiffs were entitled to recover, the measure of damages was the net value of the cotton in New York City at the time when the cotton would have reached there, if it had been carried according to the contract ; and the net value was ascertained by proving the price in the manner above mentioned, and deducting expenses.

The witness further testified, that about the 22d May, 1866, one Ghio went to Chester, S. C., where plaintiffs' lived, and represented himself as agent of the " Inland Air-Line," and made a contract with plaintiffs for the shipment of

cotton to New York over defendants' road and other roads constituting said "Inland Air-Line." That this contract was for shipment of cotton through to New York for $4.50 *per* bale until other rates were established, no fire release to be required; that this shipment of cotton (the nineteen bales in controversy) was made under said contract, and that no fire release was afterwards required and the charge made was $4.50; and that this contract was in like manner carried out by the defendants' road and others composing the "Inland Air-Line" in other shipments of cotton made by plaintiffs afterwards, on the 25th and 31st of May, 1866, and all other future shipments. To all which evidence the defendants objected. It was admitted by the Court, and the defendants excepted.

The evidence given on the trial relative to an open policy of insurance against fire, held by plaintiffs at the time the cotton was burned, need not be stated, as the point raised on its admission was abandoned in this Court.

One Scott, a witness for defendants, stated, that he was local agent at Charlotte, N. C., in 1866, for the N. C. Railroad Company; that one Pegram was agent on the road from Chester, S. C., to Charlotte, N. C.; that Pegram turned over to him all freight on his road going on the N. C. road; that the tariff of freights from Charlotte to Raleigh was $1.75 with fire release, $3.50 without fire release. He further stated, that he did not have authority to give original receipts for goods at Charlotte beyond Raleigh; that he shipped the cotton in controversy to Raleigh with fire release for $1.75; that there was an understanding with Pegram, that he was to sign fire releases when goods were shipped at half rates to Raleigh and that these releases were frequently signed the day after the goods were shipped; that Pegram gave him a fire release after the cotton was burned; said he did it for his, witness's, accommodation; but that "it was no account"; that sometimes Pegram failed to give any fire

releases at all, or he, witness, failed to ask for them. Witness also stated, that Pegram had attended to the shipment of various lots of cotton, prior to and inclusive of the nineteen bales burned, for plaintiffs, and agreed as their agent to release the defendants from losses by fire in consideration that defendants shipped their cotton at half rates.

Pegram was introduced by plaintiff, and testified, that he had no authority from the plaintiffs to sign fire releases for them, nor did he ever inform them that he had done so. That his only authority was to keep their accounts straight on forwarding cotton and to pay their revenue tax on the same; that he never had an agreement with Scott that plaintiff's cotton should go at half rates without fire release; that Scott did not contract to deliver said cotton at Raleigh for $1.75, but it was shipped as through freight to New York for $4.50, and that $4.50, was full rates.

A copy of the fire releases usually taken by the Company and a copy of the bye-laws of the Company were also in evidence. It was proved that the plaintiffs authorized no one to sign fire releases for them. The cotton was burned 23d May, 1866.

His Honor charged the jury:

1. That they must find whether or not there was a special contract between the parties. If there was none, then the defendants were responsible for the loss of the cotton as common carriers.

2. If Pegram was the general agent of the plaintiffs to ship cotton, he had a right to give a fire release without special instructions from the plaintiffs and without their knowledge; and if the jury find that the cotton was shipped under a contract made between Pegram, as agent for plaintiffs, and Scott, whereby the defendants were to transport the cotton at half rates as a consideration of their release from responsibility for fire, then the plaintiffs could not reover.

3. If the jury believe that Ghio had authority to make

the contract for the defendants and did contract to transport the cotton without fire release, and that the cotton was received by the defendants under that contract, then the plaintiffs are entitled to recover the net value of the cotton at the place of delivery at the time it would have arrived if the contract had been fully executed.

The defendants requested in writing the following instructions to the jury: (1) That a contract made by a party having the control and possession of goods, with a common carrier, touching the carriage of such goods is binding upon the owner. To which the Court responded, " that nothing else appearing, this is true. If Pegram had the control and possession of the goods and contracted at half rates with fire release for their shipment, then the plaintiff could not recover; but if the goods were shipped under contract with Ghio, at full rates through to New York, (if Ghio had authority to contract) from Chester, and were turned over to Scott by Pegram in the ordinary discharge of his duty as agent on the road from Chester to Charlotte, then the instruction asked, has no application to this case." (2) That the defendants can only be bound, as to their contracts, by the terms of the by-laws in force on the 22d day of May 1866; and that if the jury believe the by-laws on page 52, were then in existence, that upon a proper construction thereof, the Company can only be bound as to the contract in question, by the signature of the President of the Company in pursuance of the rules and regulations of the Board of Directors, and that there is no evidence of the signature of the President, and therefore the plaintiff cannot recover. This instruction was declined by the Court. (3) That, notwithstanding the jury may believe that there was a verbal contract or agreement entered into at Chester, if they find that the plaintiffs afterwards accepted a bill of lading for the cotton to be carried at one half ("or non-liability for fire") rates, that would amount to an abandonment or waiver of the contract made

at Chester.  To this the Court responded: "If the jury believe that Ghio had authority to contract, and did contract to transport, without fire release, the cotton from Charlotte to New York at $4.50, (being full rates), and afterwards Pegram, without knowledge of this contract, agreed with Scott to transfer it at the same price with fire release, the defendants are responsible, as there is consideration for the release. As to the other branch of this instruction, it has already been responded to in former parts of this charge."

The jury returned a verdict for the plaintiffs for the value of the cotton, to-wit: $——— and for costs.  Rule for a new trial; rule discharged.  Judgment and appeal by the defendants.

*Wilson and Bailey*, for appellants.
*Dowd*, contra.

RODMAN, J.  The case comes up on exceptions by defendants for the admission of evidence.

*1st. Exception* is not sustained.  The contents of a writing, which if it existed, has been lost or destroyed, and which cannot be found after diligent search, may be proved by parol.

*2nd. Exception.*  The plaintiffs gave evidence to prove that they had delivered to the defendants thirty-three bales of cotton to be carried from Chester, S. C., to New York, and that Wilkes was general superintendent of defendants' road. They were then allowed to give in evidence that Wilkes had said that nineteen bales of the cotton had been burned on 22d May 1866, at Harrisburg station, on the defendants' road. This conversation was after the alleged burning, but it does not appear how long afterwards, except that it was in the same year.

. What an agent says in the course of doing any act in the scope of his agency, characterizing or qualifying the act, is

admissible as part of the *res gestæ*. For this purpose the possession of property for the principal is an act, and what the agent says while in possession, characterizing his possession, or characterizing any act then being done to the property, is admissible, 1 Green. Ev. 113.

But if his right to act in the particular matter in question has ceased, his declarations are mere hearsay, which do not affect the principal, *Ibid.* Cases in support of these propositions may be found in abundance with but little industry. See *Williams* v. *Williamson*, 6 Ired. 281 ; *Howard* v. *Stutts*, 6 Jones, 372, and *Pennsylvania R. R. Co.* v. *Brooks*, 57 Penn. 339.

These general principles cover the present case. When the declarations of Wilkes were made the property had passed from his possession, and had been burned in the course of transportation, it may be, some months before. He was not engaged in any act as agent, which his declarations qualified or explained. They purported to give an account of an event which had passed. Neither were they distinct objects of proof, having a value as his declarations, apart from his agency ; their whole value is as admissions which he was authorized by the company to make for it.

Two exceptions have been asserted to the general rule. The first in the case of a conductor or baggage-master, whose duty it was assumed to be to answer inquiries concerning missing baggage if made in due time. *Moore* v. *Conn. R. R. Co.*, 6 Gray, (N. H.,) 450. If it had appeared in evidence in that case that it was the duty of the conductor not only to answer inquiries concerning baggage in his possession, or as to its being in his possession or not, but also as to how and when baggage not in his possession had been lost or damaged, the decision could not be questioned. But it may be doubted whether that duty was properly implied from his employment. See *Bank* v. *Steward*, 37 Maine 519. The cashier of a bank told a surety to a note which had been discounted by the bank that it had been paid, whereby

the surety was induced to release property which he held to indemnify himself, when in fact the note had not been paid. The declarations of the cashier were held inadmissible. Surely, if in any case the duty of answering inquiries could be implied from the employment, it would have been in this, and it was so held in *State Bank* v. *Wilson*, 1 Dev. 485.

The second exception contended for is in the case of a president or general agent of a company, whose declarations respecting *any* business of the company, it is said, must be considered within the scope of his agency. The only authority cited for this is *Charleston, &c., R. R. Co.* v. *Blake*, 12 Rich. Law, 634. Greenleaf says the decision is questionable.

The power to make declarations or admissions in behalf of a company as to events or defaults that have occurred and are past, cannot be inferred as incidental to the duties of a general agent to superintend the current dealings and business of the company. No such power is expressly given by the by-laws of the defendants' company, and a general power so unusual and so unnecessary in the ordinary business of a company must require a clear and distinct grant. This exception is sustained.

*3d Exception.* The witness testified that he weighed the whole thirty-three bales of cotton and knew the total weight of the nineteen bales said to be lost. That the bales differed in weight very little. Defendant excepted. This mode of arriving at the weight of the lost bales was not exact, but it was as near an approximination as could be arrived at under the circumstances. It was open to contradiction by defendant, who may be presumed to have known the weight of the bales, as well as plaintiff did. This exception is not sustained.

*4th Exception.* It was agreed that if plaintiff were entitled to recover anything on account of the lost cotton the measure of damages was the value of the cotton in New York at the time when it ought to have arrived there, less

the expense of transportation, &c.   The plaintiff in testifying said, that he only knew the value in New York by accounts of sales received from his factors informing him of sums placed to his credit, being the proceeds of sales by telegrams, circulars and correspondence.   His testimony was objected to, but received, and he stated the price in New York at the time mentioned.   There is an exception to the general rule against heresay evidence by which a matter which is of general interest to a considerable class of the public may be proved by reputation among that class. 1 Green. Ev. s. 127.   It is on this ground that reputation in a family is received as evidence of pedigree.   *Morgan* v. *Purnell,* 4 Hawks 95; and public reputation as evidence of marriage (except in certain cases): *Moffitt* v. *Witherspoon,* 10 Ired., 185 ; 6 Jones, 421 ; of character, solvency, *State* v. *Cochrane,* 2 Dev. 63 ; of the ancient name of a town, *Toole* v. *Peterson,* 9 Ired. 180, &c.   These last could not in general be proved in any other way.   And so with regard to the price of a commodity at a certain time and place ; a single sale would be slight evidence, for it might be under exceptional circumstances ; whereas the result of all the sales of the day, or of a period shortly before or after, embodied in a reputation among dealers in the article, is the best evidence which the nature of the case admits of.   The reputation thus formed and circulated by telegrams, commercial circulars, and the prices current in newspapers, is such evidence as is acted on without hesitation by all dealers in their most important transactions.   One who deals in the particular commodity must be regarded in the same light as a scientific expert, whose opinions are admissible, although they are partly derived from books of science, which are not admissible.   Best on Evidence, s. 346.   It would be against the ordinary principles on which the rules of evidence are founded to reject such evidence.   This exception is not sustained.

*5th Exception.* Supposing that there was evidence that Ghio was an agent of the defendants; the evidence of the contract made with him was clearly competent. His own representations that he was agent, would by themselves, amount to nothing. But the fact, that the cotton was received by defendants at Chester, and that its transportation was begun, was some evidence of his agency. Whether the declarations of Wilkes as to Ghio's agency were admissible, would be governed by the principles already stated, which it is unnecessary to repeat.

*6th Exception* was abandoned by defendants.

*7th Exception* raises no question of law.

*8th Exception.* The by-laws of the company enact that no contract shall be binding on the company unless ratified or approved by the President or Board of Directors. It is evident that this was not intended to apply to the ordinary contracts for freight and passage, which, from their nature and number, could not be so ratified, but only to contracts beyond the usual business of the company. Besides, the by-laws of a corporation are not evidence for it against strangers who deal with it, unless brought home to their knowledge and assented to by them. Angel & Ames' Corp. s. 359, page 380. This exception is not sustained. As the instructions of the Judge were not excepted to, it is unnecessary to notice them. Besides, nearly all the questions which could be raised on them are passed on in this opinion.

Judgment reversed and *venire de novo.*

Let this opinion be certified.

PER CURIAM.                    *Venire de novo.*