## J. M. FAIRLEY v. B. R. SMITH & CO.

*Evidence of Market Values—Expert—Newspapers.*

1. A witness cannot be permitted to testify to a knowledge of the market value of a commodity in a distant city (Boston), where his information is solely derived from reading the market reports in a newspaper published at a remote point (Charlotte).
2 But it is competent for him to give an estimate and opinion of his own as to such values, provided he be qualified to speak as an expert.
3. Market reports of such newspapers as the commercial world rely on, are admissible as evidence of market values.

(*Smith* v. *R. R. Co.*, 68 N. C., 107, cited and approved.)

CIVIL ACTION for damages tried at Fall Term, 1881, of UNION Superior Court, before *Avery, J.*
Defendants appealed.

*Messrs. Wilson & Son*, for plaintiff.
*Messrs. Burwell & Walker*, for defendants.

SMITH, C. J. In the trial of the issue of damages it became material to ascertain the market price of cotton in Boston between the 1st and 13th days of February 1876, and to prove the value, one Townsend, a clerk and book-keeper in the plaintiff's employment during that period, and who had usually assisted in weighing the cotton bought and sent off, was introduced as a witness on his behalf. He testified to a knowledge of the market value of cotton in Boston at the date mentioned, and that he derived his information from reading the market reports in the *Charlotte Observer*, a daily newspaper published in that city, but that his present recollection of the price was only from having consulted the files of that paper to refresh his memory, the day before.

This testimony after objection was permitted to go to the

jury and the exception to its admission constitutes the only matter for consideration on the appeal.

While the witness speaks of refreshing his memory by reference to the telegraphic reports in the columns of the *Observer*, and recalling what had faded from his recollection, it is plain the evidence is but that what is thus supplied. The witness does not profess to derive, from this and other accessible sources of information, the means of forming an estimate and opinion of his own, for in such case the testimony would be competent; but he manifestly depends upon a single newspaper report alone of the condition of the market and the value of the commodity in a distant city. The witness thus becomes the medium of communication of the published report to the jury, and does not testify as an expert practically conversant with the cotton trade, and giving the results of his own inquiry and examination obtained from such reliable sources as were within reach, and confiding in which prudent men would act in the daily transactions of business.

Is evidence derived as this was from reading the reports of the Boston market contained in the columns of a single daily paper issued at Charlotte, competent to go to the jury in proof of the value of cotton in Boston in February, 1876 ?

This question we proceed to consider, and to examine the more important of the many adjudications to be found in the reports.

In *Sisson* v. *Cleveland and Toledo R. R. Co.*, 14 Mich., 489, the exclusion of evidence of the state of the market as derived from reports in newspapers was held to be error; and in the subsequent case of *Clev. and Tol. R. R. Co.* v. *Perkins*, 17 Mich., 296, the introduction of the papers themselves was sustained to show the market price of an article, COOLEY, J., who delivered the opinion in both cases, stating in the first, the general rule to be, " to admit market reports of such

*newspapers as the commercial world rely on,* as evidence of market values."

Mr. Justice STORY in *Alfonzo* v. *United States,* 2 Story, 421, designates one thus testifying, as an expert, and ruled that a witness residing in Boston could testify to the price of sugar at Matanzas, from which place it had been imported, (as could merchants in the latter place,) when he had equal facilities from his actual trade and business in Boston in obtaining knowledge of the market.

None of these cases recognize the competency of such testimony from one who derives his information from the reports in a single newspaper published at a remote point, and in the absence of any proof of the source from which it was obtained, or that it was accepted and acted upon as reliable by prudent business men.

In *Lawrent* v. *Vaughn,* 30 Verm. 90, a witness was heard to speak of the market price of peas in Albany, on its appearing that he was engaged in the produce business in that place, as well as in Vermont, and received his information from those with whom he then had business relations.

Similar testimony was received in *Lusk* v. *Druse,* 4 Wend., 313, the witness being qualified to speak of the market price of wheat from an examination of the books of large dealers in that article.

In *Henkle* v. *Smith,* 21 Ill., 238, the *Weekly Gazette* was allowed to be introduced as evidence of the market, it being shown that the reports of grain were corrected weekly by the defendants themselves, and were thus in a measure their own declarations.

In *Lawton* v. *Chase,* 108 Mass., 238, a person who had been for many years engaged in sawing and in buying and selling logs in neighboring towns, and had put up a saw mill of his own in the immediate vicinity of the premises, and thus possessing unusual opportunities for acquiring knowledge, was permitted to prove the value of the logs.

24

So again in *Whitney* v. *Thatcher*, 117 Mass., 528, a mer-chandise broker in Boston, having, as a member of houses which had business relations with each other in that city and in New York, become conversant with sales of bags in the latter place derived from daily prices current lists and daily reports of sales in New York to the Boston firm, was allowed to speak of the price of that commodity in New York, the court declaring "that it is *the experience which he acquires in the ordinary conduct of affairs and from means of information, such as are usually relied on by men engaged in business for the conduct of that business, that qualifies the witness to testify."

But a more recent and more lucid exposition of the prin-ciple is contained in the opinion in *Wheeler* v. *Lynch*, 60 N. Y., 469. There, the files of a newspaper were offered to show the market value of wool. After disposing of certain ob-jections to the charge to the jury, MILLER, J., proceeds thus : " The court was also in error in admitting the ship-ping and prices-current list without some proof showing how or in what manner it was made up : where the infor-mation it contained was obtained, or whether the quotations of prices made were derived from actual sales or otherwise. It is not plain how a newspaper, containing the prices-cur-rent of merchandise, of itself, and aside from any explana-tion as to the authority from which it was obtained, can be made legitimate evidence of the facts stated. The accuracy and correctness of such publications depend entirely upon the sources from which the information is derived. Mere quotations from other newspapers, or information obtained from those who have not the means of procuring it, would be entitled to but little, if any weight. The credit to be given to such testimony must be governed by intrinsic evi-dence, and *cannot be determined by the newspaper itself, without some proof of knowledge of the mode in which the list is made out."*

Mr. WHARTON deduces the following general rule in regard to this form of evidence : A newspaper, whose office it is to procure and publish market prices, and whose editors are proved to apply to brokers and others dealing in the staple for information, is *prima facie* evidence of such prices at a time when living witnesses to the fact cannot be obtained. * * * But such *publications are not admissible without evidence showing that the prices-current are drawn from reliable sources."* 1 Whar. Evi., § 674.

In harmony with these expressions is the language of our own court in *Smith* v. *R. R. Co.*, 68 N. C., 107, where a witness stated that he knew the price of cotton in New York only from accounts of sale rendered by his commission merchants in that city, on whom he drew for the reported balances put to his credit, and from telegrams, circulars and correspondence. In regard to this testimony RODMAN, J., says : " And so with regard to the price of a commodity at a certain time and place, a single sale would be slight evidence, for it might be under exceptional circumstances ; whereas the result of all the sales of the day, or of a period shortly before or after, embodied in a reputation among dealers in the article, is the best evidence which the nature of the case admits. The reputation thus formed and circulated by telegrams, commercial circulars, and the prices current in newspapers, is such evidence, as is acted on without hesitation by all dealers in their most important transactions." He further declares that such a witness " must be regarded in the same light as a *scientific expert."* See also *Cliquots Champagne*, 3 Wall., 117, and 145.

From this review of decided cases, it is plain the evidence received in the present case has none of those essential safeguards to ensure the accuracy of the published information, as to the state of a distant market, to warrant its unqualified submission to the jury. It does not appear that business men acted upon this information, as truthful and cor-

rect, in their transactions with each other; nor from what source the information itself comes. Nor does the witness possess the qualifications permitting his opinions, if he had such outside the printed report, to be given to the jury as coming from one possessing personal experience and thereby rendered competent as an expert to give those opinions.

We therefore think there was error in the admission of the evidence, thus obtained by the witness, and without any proof outside the paper of its trustworthiness and recognition, as such, by business men dealing in cotton. There must be a new trial and it is so ordered.

Error. *Venire de novo.*