THE CENTRAL RAILROAD & BANKING CO. *v.* SKELLIE *et al.*

1. The main issue being whether or not a through contract of shipment to New York was made by the shipper and the carrier, it was error so to charge the jury as to take from them the consideration of that question, and substantially to instruct them that, whether a through contract was made or not, the carrier was liable under the common law, if it failed to ship the goods to New York within a reasonable time. If there was no such contract, the carrier's duty was to deliver the goods in good order at either of its *termini* to the connecting carrier in due time, upon which delivery its liability ceased. If such contract was made, and the carrier failed to deliver the goods in New York within a reasonable time, and the goods were thereby damaged, the shipper was entitled to recover such damages as he sustained from the unreasonable delay, whether the shipment was to be made by one route or another.

2. On the question whether the shipper made the contract with the carrier to ship the goods by a certain route, his testimony wherein he stated what experience he had in shipping such goods, and that the route indicated was a better way of shipping them, was admissible.

3. Testimony of the shipper as to certain sayings of the carrier's agent who represented it in the shipment, was admissible in rebuttal of the testimony of that agent as to a conversation which he had with the shipper on the night after the carrier had failed to forward the goods from the initial point. The agent's admissions, when applied to by the shipper and upon demand being made for the reasons of the carrier's non-compliance with the contract claimed to have been made, the transaction being still in progress, and any representations made by the agent under these circumstances, were admissible against the carrier; especially where the agent telegraphed to the shipper to come to see him in regard to the matter.

4. A witness who had been in the business of shipping fruit to New York for fifteen or twenty years and received from dealers in that city daily quotations by telegrams and circulars, as well as accounts of sales of fruit which he shipped, could testify, from returns of sales of fruit shipped by himself at a certain time, as to the market value of such fruit in New York at that time.

5. So the testimony of one who was a resident of New York and a dealer in fruit, and who sold the fruit in question, was admissible.

6. It would not be a correct rule for the measure of damages to say that "the plaintiffs are entitled to recover only what they paid for the peaches, such other loss as the proof shows that they sustained in consequence of such failure incurred in and about the loading, the superintending or loading, less what they have realized from the sale; not the profits that may have been realized from the sale in New York, in case the instructions had been followed and the fruit delivered earlier in New York."

(a) Questions for new trial indicated.

February 23, 1891. By two Justices.

Carriers. Contracts. Charge of court. Evidence. Practice. Before Judge HARRIS. City court of Macon. June term, 1890.

Reported in the decision.

R. F. LYON, for plaintiff in error.

ROSS & ANDERSON, contra.

SIMMONS, Justice.

Skellie, Lowe and Everett sued the railroad company for damages. They alleged in their petition, in substance, that they made a contract with the railroad company to ship a car-load of peaches from Summerfield on the line of defendant's road to Savannah, Ga., and thence by steamer to New York; that the railroad company sent a car from Macon to Summerfield on Saturday, and they were to load it with peaches by Monday afternoon at four o'clock, when the through-freight which passed Summerfield on its way to Savannah at that hour was to stop, take up the car and carry it to Savannah in time for the next day's steamer to New York; that the car was loaded by the hour agreed upon, but the defendant failed to stop its train and

take said car to Savannah as it had agreed to do; that they soon thereafter notified the agent of the defendant in Macon of the failure of the through-freight to take up said car, and also notified him that the peaches would thereafter be at the risk of the company; that the agent of the defendant then agreed to ship said car by rail to New York, and promised that it would arrive there by rail as early as it would have done, if it had been carried to Savannah and thence to New York by steamer; this they consented to, but informed the agent that it would be at the company's risk, that they would not release it from any damage which they might sustain by reason of its non-compliance with the original contract. They further alleged that if the company had complied with the original contract, the peaches would have arrived in New York on Thursday, the 27th of June, and that on that day said peaches were worth in that market from $5.50 to $6.00 per bushel; that instead of the peaches arriving on Thursday the 27th, as promised by the agent, on account of the negligent delays of the company and its agents they did not arrive until Saturday the 29th, too late to be placed on the market of that day; that on account of said negligent delays the peaches were badly damaged and were not worth more than $1.80 per bushel; that on account of this damage to the peaches, caused by the negligence of the company, the plaintiffs were damaged $914.50. The defendant denied that it made any contract with the plaintiffs to ship the car-load of peaches to New York; that its only contract was to furnish them a car and carry it to Summerfield; that nothing was said by the plaintiffs as to where the car was to go or when it was to go; it also denied that it made any contract or agreement with them to forward the car by all rail route from Summerfield to New York, but only agreed to forward it to Atlanta, the terminus

of its road.  Both sides sustained their allegations by
testimony, and the evidence was conflicting on every
material point.

1. Upon this state of the pleadings and evidence, the
court, at the request of counsel for plaintiffs, instructed
the jury that "if the jury should find that there was no
contract upon the subject of these peaches, then the
liability of the defendant would depend upon the com-
mon law, which is to forward all freight within a
reasonable time and without unreasonable delay, and
on failure to do that, then the liability would be as
stated by counsel, that is the difference between the
price of the peaches in a damaged condition and the
price which they would have brought if there had been
no unreasonable delay and if they had been sold upon
that day; that would be the difference." The main
question in this case, as we have shown by our state-
ment of the pleadings, was whether a through con-
tract of shipment had been made between the parties
or not, the one party claiming that they had made such
a contract and the other denying it. This charge,
therefore, took the consideration of that question from
the jury and instructed them, in substance, whether a
through contract had been made or not, that the rail-
road company was liable under the common law, if it
failed to ship these peaches to New York within a
reasonable time.  We do not understand the law to be
as stated by the trial judge.  If there was no contract
for delivery of the goods in the city of New York, as
claimed by the railroad company, then its common law
liability would be to deliver the peaches in good order
at either of its *termini* to the connecting carrier, within
a reasonable time.  It could deliver them either at
Savannah to the Ocean Steamship Company, or at At-
lanta to a connecting railroad company, and if it de-
livered them at either place in good order and in due

v 86-44

time, then its liability ceased. If, however, there was a contract by the railroad company to deliver the peaches in New York and it failed to do so within a reasonable time and the peaches were damaged thereby, the shippers would be entitled to recover such damages as they sustained from the unreasonable delay. And this would be true, whether the shipment was to be made by way of Savannah or by way of Atlanta. We think, therefore, that the exception made to the charge in the 13th ground, as above set out, was well-taken, and entitles the plaintiff in error to a new trial, because the main issue made by the pleadings was taken from the jury by this charge.

2. As to the admissibility of certain evidence which was objected to before the trial court and admitted, it is perhaps necessary for us to express an opinion, as doubtless the same evidence will be offered on the next trial. We do not think it was error to admit the evidence of Everett wherein he stated what experience he had had in shipping peaches, which is complained of in the first ground of the motion. That evidence would likely throw light upon the question whether he made the contract with the agent of the company to ship the peaches by way of Savannah and thence by the steamer, because he testified that experience taught him that that was a better way of shipping peaches than by all rail route, as they were not jostled or jolted so much. Everett insisting in his testimony that he made the contract to ship by steamer, and the agent denying it, this evidence might throw some light upon the question before the jury.

3. The plaintiff in error also complains in the 2d and 16th grounds of the motion that the court erred in admitting the testimony of Skellie as to certain sayings of Englerth, the agent of the company, on the ground that they were declarations of the agent about a past

transaction, and were not admissible as part of the *res gestæ*, and were not admissible for the purpose of impeaching the testimony of Englerth. The record discloses the fact that the defendant company had sued out interrogatories for Englerth, agent, and had asked him about the conversation which he had with Skellie the night after the company had failed to bring the car away from Summerfield. This testimony of Skellie seems to have been in rebuttal of the answers given by Englerth to his interrogatories, and seems to us to have been admissible for that purpose. It was admissible to contradict Englerth's testimony in regard to the conversation between him and Skellie on that occasion. It was claimed, however, in the argument by counsel for the plaintiff in error, that it was inadmissible on the ground that Englerth was simply the agent of the company, and any admissions that he might make in regard to transactions which were past, were inadmissible. That is generally true, but under the circumstances of this case we think the agent's admissions were admissible, when applied to by the other party and a demand made upon him for the reasons of the non-compliance by the company with the contract which he had made. We think that any representations made by him under these circumstances would be admissible against the company. The shippers claim that the agent had promised to stop the down freight at four o'clock in the afternoon and take up this car-load of peaches and carry it to Savannah. The train did not stop and take it up, and they demanded to know of the agent why it did not do so. The transaction was not closed but was in progress, and anything that the agent said in answer to this demand, we think would be admissible. And this is especially so when it appears that the agent telegraphed to Skellie at Fort Valley to come to Macon for the purpose of seeing him in regard to the matter. As

Englerth represented the company in the shipment of this freight, he was the proper person to apply to for an explanation of the delay. In giving such an explanation, he would be acting in the line of his duty and within the scope of his authority. Furthermore, according to the plaintiff's theory, the transaction undertaken by the company was to get the peaches to New York, and this can hardly be said to have been completed before the car was moved. Ample authority shows that the agent's admission was properly received in evidence. Kirkstall Brewing Co. *v.* Furness R'y Co., L. R. 9 Q. B. 468; McCotter *v.* Hooker, 8 N. Y. 501; Curtis *v.* Avon, etc. R. R. Co., 49 Barb. 148; Pierson *v.* Atlantic Nat'l Bank, 77 N. Y. 304; Morse *v.* Conn. River R. R., 6 Gray, 450; Lane *v.* Boston, etc. R. R. Co., 112 Mass. 455; Green *v.* Boston, etc. R. R. Co., 128 Mass. 221; Baltimore & O. R. R. Co. *v.* Campbell, 36 Ohio St. 659. This holding does not conflict with that in *Evans* v. *Atlanta & W. P. R. R. Co.*, 56 *Ga.* 498, where there was no proof that the agent had any authority or that it was any of his business to make the indorsement which was offered in evidence. The same distinction may be made against the case of Great W. R'y Co. *v.* Willis, 18 C. B. (N. S.) 748. See Kirkstall Brewing Co. *v.* Furness R'y Co., *supra.*

4. The 4th ground complains that the court erred in admitting certain answers of Rumph to interrogatories propounded to him. Rumph was asked what the price of Rivers peaches was in New York on the 27th and 28th of June, 1889. He answered that they sold in New York on those days at $4 for three-quarter bushel carriers. He also answered that he sold Rivers peaches on the 28th for $4 for three-quarter bushel carriers, and that they were shipped by ice-car to Savannah, thence by refrigerator on steamer to New York. On his cross-examination he said he was not in New York on or

about that time, he could not swear what the market value of Rivers peaches was at that time, only by account of sales with check to balance. It also appeared in his testimony that he had been in the business of shipping fruit to New York for fifteen or twenty years, and that in the fruit season he received daily quotations from dealers in New York by telegrams and circulars, and received accounts of sales of fruit which he had shipped. This testimony was objected to upon the ground that it was hearsay, that the witness could not testify from his own knowledge, but only from hearsay. We have given considerable time to the consideration of this question, and find the authorities hold that the testimony is admissible. Wharton says: "As value, in its business sense, consists largely of the opinion of persons familiar with a market, and as these opinions are made up in a measure of what is said by others, hearsay is a primary evidence of value. In proving value, therefore, it is admissible to resort to hearsay." 1 Whart. Ev. §255. The same is true of market value, so that "it is no objection to the evidence of a witness testifying as to market value that such evidence rests on hearsay." *Id.* §449. Direct testimony as to market value is in the nature of opinion evidence, and necessarily rests upon hearsay. Any one possessing sufficient knowledge or information may express his opinion. It seems that the witness need not be an expert or a dealer in the articles in question, but may testify as to their market value if he has had ample opportunity for forming a correct opinion. Thatcher *v.* Kaucher, 2 Col. 698; Lush *v.* Druse, 4 Wend. 313. But where the witness is a dealer in the things whose market value is in question and has had special opportunities for forming a correct opinion, his testimony is admissible as expert evidence. Lawson on Expert Ev. 439; Alfonso *v.* United States, 2 Story, 421. The fact

that the witness resides at a distance from the market, makes no difference, provided he becomes acquainted in the course of business with the market value of which he speaks. Indeed, we could find no case holding that a dealer in certain articles, who received daily quotations from and made sales in a distant city, could not testify as to the market value of those articles at that place, although he was not a resident thereof and was not there at the time inquired about. The large majority of authorities put the admissibility of such evidence upon the ground that the witness is an expert, because of being a dealer in the articles and receiving quotations or reports in the regular course of business from dealers in the distant place. Alfonso *v.* United States, *supra;* Brackett *v.* Edgerton, 14 Minn. 174; Laurent *v.* Vaughn, 30 Vt. 90; Whitney *v.* Thacher, 117 Mass. 523. See, also, Draper *v.* Saxton, 118 Mass. 428; Noonan *v.* Illsley, 22 Wis. 27; Fennerstein's Champagne, 3 Wal. 145; Clicquot's Champagne, *Id.* 114; United States *v.* Champagne, 1 Ben. 241. Other authorities hold that, while it is hearsay testimony, it is admissible under an exception to the general rule excluding hearsay, as in cases of pedigree, etc. Smith *v.* N. C. R. R. Co., 68 N. C. 107. But whether it is hearsay or expert testimony, they all agree in holding it admissible.

5. Of course, if this testimony of Rumph, who was not a resident of New York, was admissible, the testimony of Durling, who was a resident of that city and a dealer in fruit and who sold these peaches, was likewise admissible. This disposes of the third ground of the motion wherein it is claimed that the court erred in admitting Durling's testimony.

6. The 15th ground of the motion complains that the court erred in refusing the request of the company to charge as follows: "In case they, the jury, should

be of the opinion that the defendant received instructions from the plaintiffs as to the time when the car was to be shipped or forwarded from the place at which it was loaded with peaches, and the route over which it was to be forwarded, and the defendant failed to carry out such instructions, and the plaintiffs sustained loss in consequence, then the plaintiffs are entitled to recover only what they paid for the peaches, such other loss as the proof shows that they sustained in consequence of such failure incurred in and about the loading, the superintending or loading, less what they have realized from the sale; not the profits that may have been realized from the sale in New York, in case the instructions had been followed and the fruit delivered earlier in New York." There was no error in refusing to give this charge. Under the facts of this case, it was not the correct rule for the measure of damages, in case the plaintiffs were entitled to recover.

These questions which we have noticed are the only material ones in this motion for a new trial. The others seem to us immaterial, and if there be any errors in the other charges complained of, or in refusals to charge certain requests, they will doubtless be corrected upon another hearing. We think the questions to be tried by the jury in this case are: (1) Did the plaintiffs in the court below make a through contract with defendant to ship these peaches to Savannah and thence by steamer to New York? If they did and defendant failed to perform its contract, and the plaintiffs were injured thereby, they would be entitled to recover. (2) Did they make a new contract to ship by the all rail route to New York? If they made such a new contract and the defendant damaged them by an unreasonable delay on the route, they would still be entitled to recover such damages as they may have sustained by reason of the delay. If they made no new contract, but

insisted upon their first contract and simply assented to the shipment by the all rail route for the benefit of the railroad company, then they still can recover on the original contract. Of course, if no through contract was made for shipment, they cannot recover at all under these pleadings.       *Judgment reversed.*