[Civ. No. 3197.    Third Appellate District.—May 16, 1927.]

LESTER M. FISHEL, Respondent, v. F. M. BALL & CO., INC. (a Corporation), Appellant.

[1] CONTRACTS — EMPLOYER AND EMPLOYEE — PERCENTAGE OF NET PROFITS OF BUSINESS—VALUE OF GOODS ON HAND—PRICE LISTS—EVIDENCE—WAIVER—APPEAL—PRESUMPTIONS.—In an action by an employee of defendant to recover, pursuant to an understanding between the parties, a certain percentage of the net profits of defendant's business to be computed at the end of each year, the defendant is deemed to have waived any objection to the competency as evidence of certain printed price lists of asking prices by several other fruit packers of goods such as defendant had on hand at the end of a particular year, where such lists were admitted in evidence, not only without any objection on the part of the defendant, but in accordance with his expressed desire and wish; and it cannot be presumed on appeal that the preliminary proof showing the competency of such lists would not have been furnished in the absence of said waiver.

[2] ID.—COMPETENCY OF PRICE LISTS—PRELIMINARY PROOF.—In such action, before such price lists could regularly be received in evidence, there should have been introduced preliminarily extrinsic evidence showing how or in what manner the lists were made up, and where the information therein contained was obtained, or whether the quotations of prices made were derived from actual sales or otherwise, or were relied upon and consulted by the trade.

[3] ID.—TESTIMONY PARTIALLY BASED ON PRICE LISTS.—In such action, the mere fact that plaintiff, while testifying as an expert in market values, based his testimony to some extent on the price lists in question, did not entirely deprive his testimony of credit.

[4] ID. — VALUE OF GOODS — FINDING — EVIDENCE.—In such action, a finding by the trial court fixing the value of certain goods which defendant had on hand at the end of a particular year at the price paid for them by defendant, thus disallowing a deduction by defendant based on an alleged depreciation in the price of the goods at the end of the year, was supported by the evidence.

2.    Market reports as evidence, notes, 12 Ann. Cas. 127; Ann. Cas. 1913A, 795. See, also, 10 Cal. Jur. 903; 10 R. C. L. 1167. Newspapers and trade journals as evidence of market prices or quotations, note, 43 A. L. R. 1192.

3.    See 10 Cal. Jur. 964; 10 R. C. L. 956.

[5] ID.—MARKET VALUE—COST OF PERSONAL PROPERTY—EVIDENCE.— Where there is doubt or uncertainty as to the existence of a market, or of a sufficient basis for correctly determining the market value, the cost of personal property is very relevant on the question of its value.

[6] ID.—SALES OF GOODS—PRICE LISTS—EVIDENCE.—In such action, the trial court did not err in disallowing a question as to whether or not in the last month of a particular year and the first two months of the following year the defendant had sold goods at prices lower than the price quoted in the price lists in question, where the question included periods of time in such months that were not covered by such lists, and hence did not tend to contradict them.

[7] ID.—MARKET VALUE — PARTICULAR SALES — TIME—EVIDENCE.—In such action, the trial court did not err in not allowing the defendant, when testifying as an expert on direct examination, to testify as to particular sales of certain goods subsequent to the last day of the year, where the question did not indicate how long subsequent, and market value cannot be established on direct examination by evidence of particular sales.

[8] ID.—MARKET PRICES—EXPERTS—EVIDENCE.—In such action, it was not prejudicial error for the trial court to sustain plaintiff's objection to a question asked expert witnesses as to whether or not the price lists in question "represented the market prices," where such witnesses had already testified that the market price of the goods referred to in the price lists was as much as fifty cents per dozen below the price set out in the price lists.

[9] ID.—PRICE LISTS—HOW REGARDED BY TRADE—EVIDENCE.—In such action, a witness, when testifying as an expert on the question of market value, after the price lists had been already received in evidence without objection, was properly permitted to testify, over the objection of defendant, as to whether the price lists were regarded by the trade as establishing prices, as this was a proper question to ask in an attempt to lay at least a partial foundation for the introduction of these price lists, even if a proper objection had been interposed.

---

(1) 3 C. J., p. 812, n. 97; 39 C. J., p. 203, n. 27.  (2) 22 C. J., p. 189, n. 23.  (3) 22 C. J., p. 737, n. 57.  (4) 22 C. J., p. 185, n. 44. (5) 22 C. J., p. 185, n. 48.  (6) 22 C. J., p. 761, n. 50.  (8) 4 C. J., p. 1012, n. 22.

5. Price paid for personalty as evidence of value, note, Ann. Cas. 1916D, 797, 805, 810. See, also, 10 Cal. Jur. 846; 10 R. C. L. 955.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Pat R. Parker, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Robert B. Gaylord for Appellant.

Arnold C. Lackenbach and Paul A'. McCarthy for Respondent.

BUCK, J., *pro tem.*—This is an action brought to recover a balance claimed to be due from defendant for services rendered by plaintiff as a salesman for defendant. Plaintiff recovered judgment in the sum of $2,710, and defendant appeals. The case was tried before the court without a jury. There was no conflict in the evidence that plaintiff was in the employ of the defendant during the time in question, and that he was paid by defendant during the time of his employment the sum of $200 per month. And the evidence also shows, without conflict, that there was some understanding between the parties to the effect that plaintiff was to receive under certain conditions a percentage upon the profits of the business. But there was a sharp conflict in the testimony as to whether the additional sum was to be paid by defendant as a bonus, or gratuity, at some indefinite time in the future, or whether it was to be paid as a fixed commission at the end of each year, in an amount equal to twenty-five per cent of the net profits of the business earned during the year. The court found, in accordance with the contention of the plaintiff, that, in addition to his regular salary of $200 per month, he was to receive "twenty-five per cent of the net profits of the business, such profits to be computed on the 31st day of December, 1922, and annually on each 31st day of December thereafter."

It does not appear that the evidence is insufficient to sustain the foregoing finding. · It is supported by the testimony offered on behalf of the plaintiff and also, to some extent, by the testimony of the defendant to the effect that during the time of plaintiff's employment he paid him, in addition to his regular wages, the sum of $1,050, which

payment was afterward entered by him upon his books as a payment on account of commissions earned, and was by him entered in his federal income tax return as a fixed expense of his business for the year.

Counsel also contends that the evidence is insufficient to sustain the finding that the net profits of the business upon which plaintiff's commissions were to be computed amounted to the sum of $15,043.46, and he also contends that the court erred in its ruling on the admission of evidence pertaining to this finding.

The defendant was engaged in a brokerage and commission business, and also in the business of buying and selling merchandise.

From the testimony of an expert accountant who examined the books of defendant, it appears that the aggregate gross profits of the business for the year 1922 amounted to $50,-475.42. But for the purpose of enabling the court to determine the actual net profits, it was conceded on both sides that there were unquestioned net profits in the sum of $3,173.41, and that the court should determine from the evidence whether the defendant, in arriving at the above amount of net profits, was justified in deducting from the gross profits, among other amounts, certain four items, it being conceded that all other deductions claimed by the defendant were properly made. The court made no express finding as regards each of these claimed deductions, but from a simple calculation it is plain that the court allowed two of the foregoing deductions claimed by the defendant, and disallowed the two other items of deduction claimed by defendant in the sums, respectively, of $5,899.55 and $5,967.50. These items were by the court accordingly added to the amount of net profits agreed upon as above. This sum gave the amount (less an apparent clerical error of $3) of net profits found as above by the court.

Defendant's claim for the foregoing deductions was based upon his contention that he had purchased in September and October 19,700 cases of canned fruit, which he still had on hand at the end of the year, and which he claimed had at that time depreciated in market value in the above amounts as shown by his own inventory. It was agreed that the price of these goods at the time they were purchased was $2.05 per dozen. But the court was required to de-

termine the market value of the goods at the end of the year. The plaintiff, on the one hand, contended that the goods at the end of the year were worth about thirty cents per dozen above their cost, while the defendant contended that they were worth about that much less than their actual cost. But the court, as above indicated, found that there was neither a profit nor a loss in the goods at the end of the year, and that their value at that time was the amount of their original cost. On this issue a number of witnesses testified. Appellant's contention is that "solely upon two loosely identified printed price lists of asking prices by two California fruit packers, and in contravention of the uncontradicted testimony of several witnesses as to current market price, the court based its findings that the current market price of $1.70 reflected in the inventory was incorrect, and held that the plaintiff was entitled to recover upon the basis of price measured by the asking prices which appeared in these printed price lists. . . . That unidentified printed price lists of asking prices are not competent evidence to establish market value, and therefore that the court's finding upon this subject is not supported by the evidence. . . . And the court erred in its rulings as to the evidence which the defendant attempted to introduce to controvert that testimony."

[1] As regards the "two loosely identified printed price lists," the record shows that these objectionable lists were offered and received in evidence, not only without any objection on the part of the defendant, but in accordance with his express desire and wish. And it further appears that the trial judge, though they were so received, did not base his finding thereon. For these lists, if they had been received and accepted as conclusive evidence, would have shown a profit on the goods at the end of the year. [2] Learned counsel is of course correct in his contention in this court that, before the foregoing price lists could regularly be received in evidence, there should have been introduced preliminarily extrinsic evidence showing how or in what manner the lists were made up, and where the information therein contained was obtained, or whether the quotations of prices made were derived from actual sales or otherwise, or were relied upon and consulted by the trade. (*Vogt* v. *Cope*, 66 Cal. 31, 32 [4 Pac. 915].) See full annotations

on the subject, 43 A. L. R. 1192. Also, as stated in *Clemens Horst Co.* v. *Beidt,* 94 N. J. L. 230 [109 Atl. 727], "the weight of authority is to the effect that a price current list, published in a newspaper, is not competent evidence of market value without proof as to the source from which the information therein was obtained, or whether the quotations of prices were from actual sales or otherwise. The credit to be given the paper must depend upon some such extrinsic proof." But, as already noted, this preliminary proof was waived by learned counsel at the trial, and, as held by our supreme court in a case involving life, this court cannot presume that the preliminary proof would not have been furnished in the absence of counsel's waiver.

As stated by our supreme court in *People* v. *Owens,* 123 Cal. 482 [56 Pac. 251], involving the admission of a dying statement of the deceased, "the consensus of opinion, as illustrated in these cases and many others, is that where the proffered evidence is imperfect by the lack of preliminary proof, which may or may not be supplied by the party offering the evidence, the objector must specifically point out the defect by his objection, and if he fails to do so it is waived."

Also, as stated in the case of *Yule* v. *Miller,* 80 Cal. App. 609 [252 Pac. 733, at page 736]: "While some evidence was received that might have been subject to an objection, no objection was made, and it is well settled that incompetent evidence admitted without objection is to be regarded as sufficient to establish the fact. *Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 466 [168 Pac. 1037]. Evidence technically incompetent admitted without objection, must be given as much weight in the reviewing court in reviewing the sufficiency of the evidence as if it were competent. *Parsons* v. *Easton,* 184 Cal. 769 [195 Pac. 419]; *Janson* v. *Brooks,* 29 Cal. 223; *Curiac* v. *Packard,* 29 Cal. 197; *McCloud* v. *O'Neall,* 16 Cal. 397; *Williams* v. *Hawley,* 144 Cal. 102 [77 Pac. 762]."

Though to the extent that these lists may have represented mere asking prices and nothing else, they would be of little weight, and were evidently so considered by the trial judge. (*Peters* v. *McPhaden,* 75 Wash. 525 [Ann. Cas. 1915C, 63, 135 Pac. 26]; *Houston Packing Co.* v. *Griffith* (Tex. Civ. App.), 164 S. W. 431; *Fountain* v. *Wabash R. R. Co.,*

114 Mo. App. 676 [90 S. W. 393]; *Fairley* v. *Smith*, 87
N. C. 367 [42 Am. Rep. 522]; *Atlantic National Bank* v.
*Korrick*, 29 Ariz. 468 [43 A. L. R. 1184, at p. 1189, 242
Pac. 1009].)

[3] The mere fact, however, that the plaintiff, while
testifying as an expert in market values, bases his testimony
to some extent on these lists, does not entirely deprive his
testimony of credit. As stated by Holmes, C. J., now of
the United States supreme court, "an expert may testify
to value, although his knowledge of details is derived chiefly
from inadmissible sources, because he gives the sanction of
his general experience. But the fact that an expert may
use hearsay as a ground of opinion does not make the hear-
say admissible." (*National Bank* v. *New Bedford*, 175
Mass. 257 [56 N. E. 288].)

In the case at bar the objection was absolutely withdrawn
and learned counsel who represented defendant at the trial
reserved the right to avail himself of similar hearsay and
possibly incompetent evidence.

[4] Further, as regards counsel's contention that the
finding of the court was in contravention of the uncontra-
dicted testimony of several witnesses as to the current
market price, there is sufficient in the record to show that
the trial judge exercised his own proper discretion in pass-
ing upon the weight that should be accorded the testimony
of these witnesses. It appears that their testimony was, in
effect, a mere ratification of the inventory price fixed as
of the end of the year upon these goods by the defendant
in his federal income tax return. One of the witnesses
testified that, after looking at the inventory taken by his
accounting department, he took it for granted that the
market value was the same, and that the inventory price
was not fixed "as the sale price in any event." And, fur-
thermore, as to the market value at the end of the year, the
witnesses testified, in substance, that at that time no one can
fix the real market value derived during that period; that
during that time there was no demand, and for that reason
the witness was unable to fix any market value, and that
when they inventoried at the end of the year, they inven-
toried it at "as low a price as they could consistently do
so." And defendant's principal witness on market value
testified that in the canned goods business, unlike the wheat

or grain trade, there is no exchange or market where daily fluctuations in the market prices are established of record. The market value is whatever each broker or jobber interprets it for himself.

It further appeared from the evidence that at about the time the goods were purchased in September and October the market was confronted with "a pretty heavy carry-over on hand from the spring of 1922 and there were indications that the market price would not hold up and everybody was uneasy as to what the eventual outcome would be," and that the dealers "were very hard-pressed at that time in being able to dispose of one hundred and fifty or two hundred thousand cases of their next year's pack." In view of this uncertainty we cannot say that the trial court was without justification in accepting the purchase price of these goods as potent evidence in determining the value of them under not dissimilar conditions three months later in the year. [5] Where there is doubt or uncertainty as to the existence of a market, or of a sufficient basis for correctly determining the market value, the cost of personal property is held to be very relevant on the question of its value. (*Yoakam* v. *Hogan*, 198 Cal. 16 [243 Pac. 21]; *Angell* v. *Hopkins*, 79 Cal. 181 [21 Pac. 729]; *Greenebaum* v. *Taylor*, 102 Cal. 624 [36 Pac. 957]; *Union Hollywood Co.* v. *Los Angeles*, 184 Cal. 535, 538 [195 Pac. 55]; *Travis Glass Co.* v. *Ibbetson*, 186 Cal. 724 [200 Pac. 595]; *Wholesale Grocery Co.* v. *Richheimer Brokerage Co.*, 233 Ill. App. 64, at p. 68.)

[6] As regards the specific rulings of the court claimed to have been errors prejudicial to the defendant, it does not appear that the court was in error in sustaining plaintiff's objection to the question asked the witness Fishel as to whether or not in December, 1922, and January and February of 1923, the defendant had not sold goods at prices lower than the prices quoted in the price list above referred to. The court's ruling in disallowing the question was not erroneous for the reason that it included periods of time in January and February, and even in December, that were not covered by the price list in question, and hence did not tend to contradict it. And furthermore, as already indicated, the finding of the court shows that the trial judge did not accord full faith or credit to the price list in question.

[7]     Also the court did not err in not allowing the defendant, when testifying as an expert on direct examination, to testify as to particular sales of apricots and peaches subsequent to the thirty-first day of December, 1922. The question did not indicate how long subsequent, and market value cannot be established on direct examination by evidence of particular sales. (*Central Pacific R. R. Co.* v. *Pearson,* 35 Cal. 274; *City of Los Angeles* v. *Pedersen* (Cal. App.), [255 Pac. 889].)

[8]     In regard to the questions asked witnesses Mel and Philpott in regard to the price lists which, as already indicated, had been received in evidence with the consent and at the request of the defendant, each of these witnesses had already testified, as experts, that the market price of the goods referred to in the price list was as much as fifty cents per dozen below the price set out in the price list. It was therefore not prejudicial error for the court to sustain the plaintiff's objection to the question asked the witnesses as to whether or not the price list in question "represented the market price." The question was merely argumentative, and, as one of the witnesses himself stated, he had already answered the question.

[9]     The witness Fishel, when testifying as an expert on the question of market value, after the price lists referred to above had been already received in evidence without objection, was permitted to testify, over the objection of defendant, as to how these price lists were regarded by the trade as establishing prices. This was a proper question to ask in an attempt to lay at least a partial foundation for the introduction of these price lists, even if a proper objection had been interposed. (3 Wigmore on Evidence, par. 1704; *Jones* v. *Ortell,* 114 Md. 205 [78 Atl. 1030].)

Also there was no motion to strike out this testimony for failure to produce further evidence on the proper admissibility of the list. In fact, the witness was allowed to testify, without further objection or motion to strike out on the part of the defendant, that the defendant and the witness and the defendant's salesman and jobbers generally looked to these prices in making sales.

Furthermore, defendant complains that the court refused to hear further testimony on the question of values, but the record does not show what, if any, testimony was offered,

nor whether or not the testimony, if offered, would have been material.

For the foregoing reasons we do not believe that there is a sufficient showing of error in the record to warrant a reversal of this case, and the judgment is therefore affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 13, 1927.