[Civ. No. 10402. Second Appellate District, Division One.—April 28, 1936.]

THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Defendants and Appellants; CENTRAL HANOVER BANK & TRUST COMPANY (a Corporation) et al., Cross-Defendants and Appellants.

Guy V. Shoup, C. W. Durbrow, Frank Karr, R. E. Wedekind and C. W. Cornell for Defendants and Appellants.

Gibson, Dunn & Crutcher and H. F. Prince for Cross-Defendants and Appellants.

Robert Brennan, M. W. Reed, E. T. Lucey, E. E. Bennett, Malcolm Davis, Hill, Morgan & Bledsoe and Charles H. Woods for Respondents.

HAAS, J., *pro tem.*—This is an action for the condemnation of certain properties in the city of Los Angeles to be utilized in the construction of a union passenger depot in said city.

■ Appellants' opening brief charges irregularities and misconduct of respondents' counsel, setting up that by such irregularities and misconduct before the jury, respondents prejudiced the jury in their favor to the detriment of appellants and resulting in a miscarriage of justice. The record reveals the following took place in the presence and hearing of the jury panel:

"Mr. Morgan: I'll say this for us, and I think counsel will agree, I think it will be agreeable on· all sides, if we tell the jury that there will be no occasion to ever lock them up as far as the case is concerned. It has been usual in condemnation cases, even when submitted to the jury, to agree that they might, if they have not agreed upon a verdict, at the regular time for quitting each day to allow them to go home and return to deliberate again the next day.

"The Court: In any event, there will be no occasion to keep them together until at least the case is submitted to them.

"Mr. Morgan: No, your Honor.

"Mr. Karr: That would be my idea.

"The Court: The other question can be met when we come to it. There will be no occasion to keep you together during the progress of the case at all."

The record further reveals the following: "Thereupon the plaintiffs rested and there being no rebuttal, the jury, pursuant to stipulation of all parties, again viewed the proposed location of the depot site and after doing so returned to the court room; the case was argued to the jury by counsel, after which the following proceedings took place in the presence of the jury:

"The Court: I take it we will not submit the case to the jury this afternoon.

"Mr. Morgan: It would be pretty late, Your Honor, wouldn't it?

"The Court: There are some matters I want to discuss with counsel.

"Mr. Brennan: I think it would be more satisfactory if the jury could be instructed in the morning and sent out.

"Mr. Morgan: I think, Your Honor, in a case like this, even if the jury is unable to arrive at a verdict at quitting time each day, there is no necessity of locking them up, and I

think each side would agree that they could go home every afternoon and come back the next day and redeliberate, and if they can arrive at a verdict in those hours—

"The Court: In any event, if the instructions are given at ten o'clock tomorrow morning there will be a whole day ahead. We need not meet that question now.

"Mr. Karr: I think we would be perfectly willing to agree with Mr. Morgan on that. However, I think we ought to determine that when the time comes.

"The Court: There is no necessity of making any agreement now.

"Mr. Morgan: I made that suggestion only because I had previously talked it over with Mr. Karr, and it was agreeable to him.

"Mr. Karr: The jury might have some preference.

"Mr. Morgan: I do not think any juror likes to be locked up, not in this weather."

"The irregularity of respondents' counsel," appellants contend, "in making the suggestion he did led directly to the separation of the jury after the cause had been submitted to the jury, after it had deliberated for several hours and before a verdict had been reached by it; that the separation was permitted for the night of August 2d; that the separation laid the way open for the jury to receive and consider evidence from outside sources; that some of the jurors did receive such evidence is indicated by some of the affidavits filed on the motion for a new trial".

Did the result (namely, the fact that the jury was permitted to separate on August 2d) jeopardize the interests of appellants and result in a miscarriage of justice?

There is nothing in the record to show that the statements made by the attorney for respondents were in any way taken by the jury to mean that respondents were unduly concerned about their comfort even though he may have been attempting to curry the favor of the jury. ■ It has been held that it is not "ground for the reversal of the judgment on the verdict, where the remarks are not shown to have influenced any juror and the trial court passed upon the effect of the remarks" on a motion for a new trial. (*Charlton* v. *Kelly*, 156 Fed. 433, 13 Ann. Cas. 518.) "The general rule is, in civil as well as in criminal cases, that after the cause has been submitted and the jury have been

charged, they must be kept together in charge of a sworn officer, and prevented from communicating with other persons, until they have agreed on their verdict.'' (*McKinney* v. *People,* 2 Gilm. (Ill.) 540 [43 Am. Dec. 65, 77], and cases there cited.)

A question was raised as to whether the trial court erred in overruling appellants' objections to receiving evidence of sale prices of other parcels than the ones in controversy, as evidence of the market value of the land sought to be condemned. It is contended by appellants that on cross-examination, the witnesses, Edward H. Allen, Richard W. Puffer, George L. Schmutz and J. L. Brady, called by respondents, were asked whether or not in their investigation they had learned of certain specific sales in the neighborhood; that where they gave an affirmative answer each was asked to state the date of the sale, the parties to the transaction and the sale price; and that on redirect examination ''the trial court fell into error, when, over appellants' objections it permitted the following types of questions to be asked of, and answered by, these four witnesses: 1. Questions as to whether or not the sales inquired about on cross-examination were of properties more or less valuable than property on Alameda street and the property sought to be condemned. 2. Questions as to whether or not the sales inquired about on cross-examination were in localities which compared favorably or unfavorably as to development and improvement with property on Alameda street, between Aliso and Macy. 3 Questions as to whether or not property in the general locality of the property sought to be condemned had increased or decreased in value during stated periods up to the time of the trial. This class of questions included all property in the general locality in the case of some of the questions, and in the case of other questions involved only particular pieces of property in the locality. 4. Questions as to what weight or effect the sales inquired about on cross-examination had on the witnesses' opinions of the market value of the property sought to be condemned. 5. Questions as to adaptability for use and actual use of the property in the locality of the sales inquired about on cross-examination.''

We know of no better way than to consider *seriatim* the ''principles'' appellants set forth in their brief in regard

to these questions, here referred to by number. 1. The authorities in relation to the burden of proof as to value in proceedings in eminent domain, are conflicting. (Lewis on Eminent Domain, vol. 2, sec. 426.) In California the burden as to value is on the defendant. Section 1244 of the Code of Civil Procedure provides what the complaint shall contain, and it does not mention value or damages. And if the plaintiff was not required to allege value as damages, he is not required to prove it. This was the view taken in *California S. R. R. Co.* v. *Southern Pac. R. R. Co.*, 67 Cal. 59, 63, 64 [7 Pac. 123]. This was also the case here. The burden of proof was on the defendants. That such witness may not on direct examination state the details of other sales he has investigated is well settled in California. (*City of Los Angeles* v. *Fred T. Hughes et al.*, 202 Cal. 731, 736 [262 Pac. 737].) This case is cited by appellants. It was urged therein that the trial court committed error in admitting on direct examination evidence of the selling prices of land in the neighborhood. The question propounded in the case above cited, on direct examination, was: "Now you have a list of any sales made there, that your figures are based on?" Quoting from the opinion, "Objection was made to this evidence on direct examination of any *specific sales,* but the court stated that Mr. Smith 'could tell what he knows about sales out there'. This the witness proceeded to do. The ruling was erroneous and the objection should have been sustained. . . . But we are not convinced that the ruling was prejudicial. Much testimony was properly given by witnesses for both sides as to specific sales in that vicinity and the record indicates that the trial court increased the award in reliance, in part at least, on such evidence." (Italics ours.) The same may be said of the case at bar. In a case where as much testimony was taken as in the case at bar, we cannot conceive that such an irregularity was emphasized in the minds of the jury to prejudice them.

It will be noted that in the case of *Central Pacific Railroad Co. of Calif.* v. *James Pearson et al.*, 35 Cal. 247, the court admonished against allowing such evidence on direct examination as leading to "interminable" investigation but the question whether a ruling of the court overruling objection to its introduction constituted grounds for a reversal

did not arise. So the case of *City of Los Angeles* v. *Deacon*, 119 Cal. App. 491 [7 Pac. (2d) 378], does not make such a ruling reversible error, *per se*. The question, after stating the general rule, was categorically put by the court in that case, "Was the error prejudicial?" referring to the admission of evidence by the trial court of net income as substantive proof of market value. It is apparent that in the case above cited the judgment of the trial court was reversed because the appellate court held that evidence was permitted to be introduced on direct examination showing "the net profits derived from the use that is being made of the property", and the reviewing court held that the error *was* prejudicial for reasons stated. There is nothing in the evidence in the case before us that would lead us to conclude that reasons of the same potency and weight hold here. The evidence in the above cited case constituted the very hinges upon which the door of the decision swung. In the case before us evidence of the value was adduced on direct examination and the evidence in question that was admitted, on the objection being overruled, was merely a small part of all the evidence before the jury. The case of *De Freitas* v. *Town of Suisun City*, 170 Cal. 263, 266 [149 Pac. 553], also swings upon the same pivot: "In the present case, however, the questions, both as to value and damage, were framed upon the *erroneous theory* that value may be determined *from gross revenue alone,* and neither of them should have been allowed. . . . We cannot say that the erroneous admission of this evidence did not affect the minds of the jury in their deliberations. On the contrary, we believe that it probably did influence them." (Italics ours.) We also note this important statement of the court: "One witness for plaintiff testified properly to the value of land." Apparently the reviewing court held the evidence of this one witness was not sufficient and reversed the judgment and order refusing a new trial. So in the case of *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 528 [28 Pac. 681], the Supreme Court sustained the judgment of the trial court where an objection was sustained to the questions as irrelevant and incompetent on direct examination of the witness: "Do you know what the value of that land is down there for reservoir purposes? Have you any means of

knowing the value of this land for reservoir purposes?'' and the objection was rightly sustained in accordance with the well-established rule of evidence that the plaintiff is limited to bringing out the value of the property. The question whether or not any evidence adduced was prejudicial did not arise here. *In the Matter of the Estate of Ida Hancock Ross et al.*, 171 Cal. 64 [151 Pac. 1138], the well-established rule of evidence above stated is again laid down. Here the court affirmed the order of the trial court fixing the value of the estate of decedent and leaned toward a broad construction of the rule. Nowhere in the court's opinion do we find the question discussed as to whether evidence introduced was prejudicial. In the case of *Fishel* v. *F. M. Ball & Co., Inc.*, 83 Cal. App. 128 [256 Pac. 493], tried before the court without a jury, a witness for the plaintiff was permitted to testify, over objection, as to how certain price lists already received in evidence without objection were regarded by the trade as establishing prices. The court here said, ''This was a proper question to ask in an attempt to lay at least a partial foundation for the introduction of these price lists, *even if a proper objection had been interposed.*'' (Italics ours.) The appellate court held there was no sufficient showing of error in the record to warrant a reversal.

We note in the later cases a more liberal tendency in applying the rule; also that there must be a strong showing on the part of appellant that the error, if any, is prejudicial.

2. What we have said in regard to Question 1 applies equally to Question 2, and hence we will not again review the cases cited as to that point. In the case of *Palladine* v. *Imperial Valley Lands Assn.*, 65 Cal. App. 727 [225 Pac. 291], the appellate court held that, ''testimony as to the prices at which other similar lands could be bought was proper for the purpose of testing the witnesses' knowledge and impeaching their opinions, but not for the purpose of fixing the value of the land; and the jury should have been so advised, particularly in view of defendants' requested instruction''. The question whether evidence introduced was prejudicial to either party to the case was not discussed, nor was the rule laid down there that the witness could be cross-examined only for the purpose of testing qualifications. The case of *City of Santa Ana* v. *Harlin,* 99 Cal. 538 [34

Pac. 224], does not go to the point here raised although it sets up the general rule of evidence. The case of *City of San Luis Obispo* v. *Brizzolara*, 100 Cal. 434 [34 Pac. 1083], at most sets forth the well-accepted rule in this state. Evidence of price paid for other lands "was proper in cross-examination of the plaintiff's witnesses for the purpose of testing the accuracy and honesty of the opinions which they have given of the value of the land in their direct examination, but, as it would not have been admissible as affirmative evidence for the purpose of establishing the value of the land in question, it was not competent for the court to consider it for that purpose, even though properly brought before it in cross-examination. It may be added that, even if it had been competent evidence of the value of the land for which the price was given, it would not sustain the conclusion of the court". Nothing here is said about the ruling being prejudicial error, nor does the opinion show that the judgment would have been reversed for that reason. We see no reason why the judgment should be reversed on this point.

3. What we have said in answer to Question 2 is applicable here. In *Reclamation District No. 730* v. *Inglin*, 31 Cal. App. 495 [160 Pac. 1098], the court states: "It follows, of course, that the court not only erred in allowing the question of sales of other lands and the prices paid for such lands to be gone into on the *redirect* examination of the witness, Kendall, but erred in refusing to grant the motion to strike out the testimony of said witness, it having been made clearly to appear from said testimony that the witness had based his opinion upon the question of value wholly upon incompetent matters. . . . But we think the errors thus considered were not prejudicial, for it is obvious from the verdict that the jury did not accept the testimony or opinion of the witness, Kendall, upon the question of the value of the property proposed to be taken". (Italics ours.) Taking the evidence as a whole, there is nothing in the case before us to disclose that the evidence, erroneously admitted, influenced the verdict.

4. In *McCabe* v. *City of Chelsea*, 265 Mass. 494 [163 N. E. 255], the appellate court held that evidence adduced on redirect examination of the value of a lot not being the subject for which damages were claimed, was error, and

should have been excluded but that "it is the duty of the excepting party to show either expressly or by fair inference *that he was harmed* by the admission of incompetent evidence. . . . If the jury gave any weight to the evidence, it operated against the interest of the defendant. It cannot be assumed that they disregarded it. This exception must be sustained." (Italics ours.) In the case cited no doubt the court had the transcript of evidence before it and when the court states "it cannot be assumed that they disregarded it", it means to say that there can be no such assumption from the evidence before it. In the case at bar the transcript of the case shows ample reason why the jury did not permit the evidence objected to, to influence or prejudice them to the detriment of appellants.

The further charge is made by appellants that the trial court erred in refusing to let evidence of the nature of "Plan 4–B" go to the jury inasmuch as this refusal by the court precluded appellants from developing the exact location of the station as per plan involved in decision of the railroad commission No. 18593 set forth in plaintiff's exhibit 1, ordering the construction of the union passenger station, and it is urged that the alleged error was prejudicial to appellants and resulted in a miscarriage of justice.

We are first confronted with the question whether the ruling of the trial court in regard to the admission into evidence or rejection of Plan 4–B extended to its entire exclusion—or to the exclusion complained of by appellants. It will be remembered that defendants' (respondents') exhibit "I" was accepted in evidence while the witness Astrue was on the stand and that he identified the exhibit, stating what the various marks and designations on the map in decision No. 18593 represented and that it "shows by very fine dotted lines the so-called plan 4–B. . . . The map enclosed within the dotted lines and where it is not superimposed over with red, shown in yellow, outline lines shown on the commission's exhibit 4–B in the 1927 decision of the railroad commission", and then the witness proceeded to explain from the map what the various tints represented, and that the areas so colored were sought to be condemned in this proceeding. We must deduct from this that the jury was informed that the railroad commission had made a decision which referred to said Plan 4–B. By that decision rendered July 8, 1927, the commis-

sion ordered the respondents and appellants herein (except Southern Pacific Railroad Company) to proceed " . . . in substantial compliance with the plan outlined in commission's exhibit 4–b herein". However, exhibit 4–b mentioned in said decision 18593 was not included in plaintiffs' exhibit 1 in this case. On defendants exhibit "I" the Plaza Set Back Plan and exhibit 4–b both are shown. However, when defendants' exhibit "I" was introduced, it was introduced into evidence "for the purpose of showing the area of land which is involved in this condemnation proceeding and the general territory immediately surrounding it, and not for the purpose of showing any of the detail of the railroad construction". It is appellants' contention that the commission's order of July 8, 1927, was an important element to be employed by anyone seeking to determine the market value *as of the date of filing the complaint herein,* namely, December, 1933, in that the very order itself, becoming known, retarded this area, i. e., "stigmatized" it, and affected its market value. The law does not, however, lend a willing ear to speculation. While appellants may have evidenced change for the worse in the demand for real estate there between July, 1927, and October 4, 1933, when the commission issued its decision 26399, approving the Plaza Set Back Plan, yet the trial court would have permitted an indulgence in unfathomable speculation had it opened the road to the examination of witnesses, using the order of July, 1927, and said Plan 4–B as a basis in order to determine whether there was a slump in the market in this area, and if so, what it was due to, during that period. Appellants' statement: "In other words, appellants were entitled to have the market value of this land determined as if the decision of the commission never had existed", to us is paradoxical. The market value is an effect and we are not governed by the cause that brings it about in order to determine it. The *market* value could have been neither greater nor less if the cause had been examined into. Such examination of the exhibit containing Plan 4–B was not relevant nor material in determining the market value as of the time of filing the complaint.

The case of *Mississippi & R. River Boom Co.* v. *Patterson,* 98 U. S. 403 [25 L. Ed. 206], has no bearing on this case, nor is appellants' contention therein sustained. Here three islands were sought to be condemned for the purpose

of a boom, i. e., to catch floating logs. It was not urged therein that the property had been ''stigmatized'' by any agency, public or private, and the case of *San Diego Land etc. Co.* v. *Neale*, 78 Cal. 63, 75 [20 Pac. 372, 3 L. R. A. 83], referred to by appellants, expressly holds, '' . . . it seems monstrous to say that the benefit arising from the proposed improvement is to be taken into consideration as an element of the value of the land''. If the benefits may not be considered, why consider the detriment? A value so derived is too remote and speculative.

Appellants then charge that ''The trial court committed error in unduly restricting the cross-examination of one of respondents' expert witnesses'', referring to the witness George L. Schmutz. While we cannot see the relevancy to the issue of much of the testimony of this witness of respondent, much of which is apparently based on rumor and hence of little weight, yet no objection was raised to it. The objection was raised by respondents' counsel, Mr. Morgan, when appellants' counsel, Mr. Karr, apparently attempted to read a voucher into evidence without first submitting it to the witness. The objection reads:

''Mr. Morgan: I object as incompetent, irrelevant and immaterial. First, that it is not proper cross-examination, and second, it is not a proper manner in which to call the witness' attention to a particular document by purporting to read it into the record before it is shown to the witness and before it is admitted into evidence.

''The Court: I think that is correct, Mr. Karr.''

It is apparent that the statement of the court related to the later statement or objection of Mr. Morgan, and did not go to the question of the competency, relevancy or materiality of the objection. It goes without saying that the court committed no error in preventing the voucher to be read into evidence before it was shown to the witness and offered and received into evidence. This did not constitute an attempt to unduly restrict appellant counsel's examination of the witness.

We are of the opinion that the rulings of the trial court in matters above referred to were neither so erroneous nor irregular as to prejudice the jury in arriving at its verdict.

But we have yet to consider whether the appellants, Chase National Bank of the City of New York and Central

Hanover Bank & Trust Company obtained a fair trial. It is alleged in their opening brief that they were the holders, respectively, of encumbrances on property of the appellant Southern Pacific Railroad Company known herein as parcel 2, and on the property now used as a depot by said company known as the Arcade Station, not being condemned herein. They urge: "I. That the trial court committed prejudicial error in denying the banks the right to cross-examine expert witnesses produced by the Southern Pacific Company and the Southern Pacific Railroad Company; and II. That the trial court committed prejudicial error in striking from the answer of each bank a special defense which, under the contentions of the banks, had proper bearing upon the damages to be awarded for the taking of Parcel 2, covered by the mortgages."

A careful reading of the statements of counsel and rulings of the court convinces us that the court was considerate and not hasty in its rulings; and that the objection was sustained on the ground that appellant banks were sharing in the compensation to be awarded. It is apparent that, at the best, defendant banks could succeed in nothing to their benefit by such examination unless it be to boost the values already given by the witness, in which case it would not in fact be cross-examination but would be redirect examination, if not direct, and we note these words of the court in sustaining the objection: "That does not foreclose you from, on redirect examination, going further into any of the sales which have been enquired about by Mr. Morgan on cross-examination." The witness had been called as a witness of the defendants. We find no justification for cross-examination of the witness Boylin by counsel for the banks. To have permitted it would be to violate the rule as to cross-examination laid down in section 2045 of the Code of Civil Procedure, for we find nothing in the evidence or the pleadings indicating that the interest of the banks, who hold the mortgages on the property of the Southern Pacific Railroad Company, being condemned herein, is adverse to the interest of the Southern Pacific Railroad Company or to the Southern Pacific Company. Whatever the banks were to receive must be carved out of what the Southern Pacific Railroad Company would receive as an award. Hence their interests were not antagonistic but identical. We find no prejudicial error in the ruling of the court sustaining an

objection to permitting counsel for the banks to *cross*-examine the witness for the Southern Pacific Company and the Southern Pacific Railroad Company.

As to the second charge of error set up by the banks, having reference to the abandonment of the Arcade Station:

 It is contended that inasmuch as the mortgage of the bank covers both parcel 2 of the Southern Pacific Railroad Company, which parcel was being condemned herein, and the land on which the Arcade Station is situated, not being condemned herein but which it is alleged will necessarily be abandoned when the new union depot is in operation, that there is such a connection between the two properties that the Southern Pacific Railroad Company and the Southern Pacific Company should be considered as suffering a damage by severance because of the contemplated loss of the use of this station. There is nothing in the evidence by which the court could infer that the properties are contiguous. It is not disputed, however, that the Southern Pacific Railroad Company has the right to operate trains over tracks on a strip of land lying between the Arcade Station and parcel No. 2, and that the Arcade Station will be abandoned by the two railroad companies. It must be remembered that the abandonment is due to action to that effect by the railroad commission, and not due to any order of the trial court. The Arcade Station property is not the property sought to be condemned either in whole or in part here. There must be physical contiguity (sec. 1248, subd. 2, Code Civ. Proc.), or else no damage can be recovered for severance. The fact that there was a spur track leading from the main line of the Southern Pacific Railroad tracks, running from the Arcade Station to parcel No. 2, sought to be condemned, cannot constitute the Arcade Station grounds contiguous to parcel No. 2, nor does that fact make the two parcels susceptible of a common use. (*East Bay Municipal Utility District* v. *Kieffer*, 99 Cal. App. 240 [278 Pac. 476, 279 Pac. 178], and *City of Oakland* v. *Pacific Coast Lumber etc. Co.*, 171 Cal. 392 [153 Pac. 705].)

 Whatever damage may result to the Arcade Station by this proceeding is a damage to the business and not to the realty. In the case of *City of Stockton* v. *Marengo*, 137 Cal. App. 760, at 765 [31 Pac. (2d) 467], the court states: ''The problem as to what constitutes a single parcel of land in contemplation of the foregoing statute'' (see sec. 1248,

subd. 2, Code Civ. Proc.) "is essentially a question of law for the determination of the court". The tracts must be *contiguous* and must be used for *one general purpose*. (20 Cor. Jur., p. 735, sec. 190.) "If the several parcels have no relationship except that which arises out of a common ownership, the necessary unity does not exist." (Idem.) The mere fact that parcel 2 had a spur track running into it from the main line cannot be held to give it such a "common use" or "general purpose" as is contemplated by law. Such a use is not comparable with that outlined in *Union Terminal R. Co.* v. *Peet Bros. Mfg. Co.*, 58 Kan. 197 [48 Pac. 860], where there were "two tracts of land owned by a manufacturing company, *separated by a cattle drive* sixteen feet wide, over and under which the landowners had a right of way, with full privilege to bridge over or tunnel under, as they might see fit", and where it was held that "damages may be awarded to both tracts, though the right of way appropriated is taken wholly from one of them". (Italics ours.) In *Cameron* v. *Pittsburgh & Lake Erie R. Co.*, 157 Pa. 617 [27 Atl. 668, 22 L. R. A. 443], it is held no recovery can be had where the injury is indirect and consequential only.

The case at bar is not comparable with the case of *Westbrook et al.* v. *Muscatine N. & S. R. Co.*, 115 Iowa, 106 [88 N. W. 202], where a farm was divided by an intervening tract, wherein it was held that the "manner in which plaintiffs used their lands . . . was the test of whether they" (the separate tracts) "constituted *one farm*". (Italics ours.) Inasmuch as the manner in which parcel No. 2 was used is not comparable with the manner in which the lands of the Arcade Station were used, the portions of the answers referred to were properly stricken out by the court.

For the reasons advanced we are of the opinion that the judgment should be, and it is therefore, affirmed.

York, Acting P. J., concurred.

Doran, J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 26, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1936.