[Civ. No. 11819.   First Dist., Div. One.   May 13, 1942.]

J. A. YOUNG, Respondent, v. BATES VALVE BAG CORPORATION (a Corporation) et al., Appellants.

Weinmann, Quayle & Berry and Herbert Chamberlin for Appellants.

Nichols & Richard and Leonard J. Dieden for Respondent.

PETERS, P. J.—Defendants appeal from a judgment entered after a jury verdict in favor of plaintiff in the sum of $7,000 in an action brought by plaintiff to recover for personal injuries. The defendants are the Bates Valve Bag Corporation, on whose premises the injury occurred, R. G. Swain, superintendent of the company, and Harold M. Compton, an employee.

The facts are as follows: On March 31, 1931, George Cullom, then manager of the Bates Valve Bag Corporation, signed an application on behalf of the corporation for gas service to be supplied to the corporation by the Pacific Gas & Electric Company. By the terms of this application the Bates Valve Bag Corporation agreed "to conform to and abide by your rules and regulations in force relating to the purchase and sale of the said service as filed with the Railroad Commission of California." Rule 25 then on file with the commission provides that "The Company [P. G. & E.] will at all times have the right of ingress to and egress from the consumer's premises at all reasonable hours for any purpose reasonably connected with the furnishing of gas, and the

exercise of any and all rights secured to it by law, or these Rules and Regulations.'' Rule 23, also then in effect, provides that: ''The Company [P. G. & E.], whenever it shall find it necessary for the purpose of making repairs or improvements to its system, will have the right to suspend temporarily the delivery of gas, but in all such cases, as reasonable notice thereof as circumstances will permit, will be given to the consumers, and the making of such repairs or improvements will be prosecuted as rapidly as may be practicable, and, if practicable, at such times as will cause the least inconvenience to the consumers.'' Pursuant to this contract, gas has been furnished by the Pacific Gas & Electric Company to the Bates Valve Bag Corporation from 1931 to and including December 8, 1939, the date of the accident upon which this action is predicated.

On December 8, 1939, the Pacific Gas & Electric Company was installing a new gas connection to a plant located near to, but unconnected with, the Bates Valve Bag Corporation. In order to make this connection it was necessary temporarily to cut off the gas service to the Bates Valve Bag Corporation. A representative of the Pacific Gas & Electric Company called at the Bates Valve Bag Corporation and told Swain, the superintendent, that it was necessary to shut off the gas to the plant in order to make the connection. The Bates Valve Bag Corporation used gas for heating purposes, and at first Swain objected to turning off the gas because it was a cold day. According to the testimony most favorable to plaintiff, Swain finally consented to shutting off the gas while the new connection was being made, and requested that the Pacific Gas & Electric Company send someone down to relight the heaters because he did not have time to do it himself. The gas company representative telephoned his office and received assurance that the Pacific Gas & Electric Company would send out an employee to relight the heaters. This assurance was communicated to Swain, and the gas was turned off at the meter. This was about 3 o'clock in the afternoon.

Shortly before 5 o'clock in the afternoon of the same day the plaintiff, J. A. Young, employed by the Pacific Gas & Electric Company to make adjustments on gas appliances, arrived at the Bates Valve Bag Corporation plant after having received instructions from the dispatcher of his employer to go to the plant and adjust the appliances. Young first talked with Swain and informed him of his mission. Swain pointed

out two gas heaters that were located in the office, told Young they should be lighted, and told him that there were other heaters located in the factory that should be lighted. He conducted Young into the factory and called Compton, an employee of the Bates Valve Bag Corporation, and instructed him to assist Young in lighting the heaters.

The two office heaters are located on the floor. In the factory there are four heaters, one in each corner of the large factory room which is 100 by 150 feet in area. These four heaters are suspended 12 feet 6 inches above the floor. Above the factory floor there are steel girders that support the roof running east and west, and immediately underneath these girders are several steel tram rails 8 inches high, running north and south. On the floor of the factory is located various heavy machinery used in the manufacturing process. The tram rails are so-called "I" beams. Along the bottom lip of these "I" beams, rollers for electric hoists are operated. Just under the upper lip of the "I" beam, and attached thereto by porcelain insulators on each tram rail, is an electric conducting bar from which the hoists receive electric energy. These conducting bars are charged with 220 volts of electricity. They are unguarded. Except for the fact that the "I" beams are perforated there is little to distinguish them from the steel beams that support the roof, in fact, plaintiff testified that they all looked like steel girders to him. He also testified that the tram rails looked like girders with a little pipe running along them—that it might have been a water pipe or another little gas line.

As already mentioned, the gas heaters are located in each corner of the factory room and are suspended above the floor. The heater in the southwest portion of the plant is so located that the bottom of the heater is but five and one-half inches above the top of the tram rail, and the west side of the heater is within a few inches of the conducting bar.

Compton, who had been directed by Swain to assist plaintiff, directed plaintiff to a twenty-foot ladder, and throughout the operations about to be described assisted plaintiff in placing the ladder. There were no signs indicating that the conducting bar was energized and neither Swain nor Compton warned plaintiff of that fact. Compton testified that he thought of warning plaintiff but failed to do so. Young first turned off the gas at each appliance. This necessitated placing the ladder near each heater in the factory, climbing the ladder

and turning off the gas valve located outside the heater. Young then turned on the gas at the meter, lit the pilot light in the two office heaters, and, in the company of Compton, returned to the factory. He ascended the ladder and lit the pilot light in the heater in the southeast portion of the building. He and Compton then proceeded to the southwest heater, and the two of them placed the ladder so that Young could make the adjustments on that heater. Young ascended the ladder and turned on the gas valve on the east side of the heater. On the west side of the heater, which was the side closest to the conductor bar, is a little door about an inch in diameter leading to the pilot light which is inside the heater. Young opened the door, and applied a lighted match to the pilot. The door leading to the pilot is so small that it was necessary for Young to lean over to see if the pilot had been lit. In doing so, in order to support himself, he placed his left hand on the gas pipe of the heater, and his right hand on the tram rail. This hand came in contact with the energized conductor bar, resulting in Young receiving a severe electric shock. Compton, observing what had occurred, after a short delay, turned off the current and Young dropped from the ladder to the floor, sustaining a fractured skull and spinal injuries. It was for the injuries so received that the present action was brought. Defendants' motions for a nonsuit, directed verdict, judgment notwithstanding the verdict, and for a new trial were denied.

On this appeal it is urged that there is no evidence that defendants were negligent; that as a matter of law the evidence established that plaintiff was guilty of negligence; that the trial court erred in admitting evidence; and that error was committed in refusing an instruction offered by defendants.

Appellants argue that respondent was a mere licensee, and that therefore the only duty owed to him was to abstain from wilful or wanton injury, or active negligence. (*Powers* v. *Raymond,* 197 Cal. 126 [239 Pac. 1069]; *Yamauchi* v. *O'Neill,* 38 Cal. App. (2d) 703 [102 P. (2d) 365].) It is also urged that if it be held that respondent was an invitee, in which event appellants were under the duty of using reasonable care to keep the premises in a reasonably safe condition, and to give warning of latent or concealed perils (*Blodgett* v. *B. H. Dyas Co.,* 4 Cal. (2d) 511 [50 P. (2d) 801]), there was no evidence to show a violation of that duty.

The rules by which it is determined whether a particular person is an invitee or licensee have frequently been discussed. In *Aguilar* v. *Riverdale C. C. Assn.*, 104 Cal. App. 263, 266 [285 Pac. 889], the rules are summarized as follows: "Whether a person entering the premises of another bears the legal status of an invitee or of a bare licensee depends upon the nature of the business which brings him on the premises, and before such person can be given the legal standing of an invitee it must appear that he has entered the premises at the express or implied invitation of the owner or occupant thereof. If it be shown that his purpose in so entering was one of common interest or mutual benefit to the owner or occupant and himself, or was in connection with the former's business which was there being carried on, an invitation is implied. But if it be shown that he stood in no contractual relationship with the owner or occupant, and that he was there for purposes purely of his own or of a third party which had no relation whatever to the business of the owner or occupant, and in which the latter had no interest, beneficial or otherwise, he is deemed in law to be a bare licensee."

After reading the record, and keeping in mind the tests above enumerated, it seems clear to us that respondent was an invitee as a matter of law, or, if the question were a debatable one, that the implied finding of the jury that he was an invitee is amply supported by the record. Appellants argue that respondent was merely given permission to enter the premises because his employer had been extended the courtesy by the Bates Valve Bag Corporation, much to its inconvenience, of shutting off the gas for the purpose of making a gas connection for another firm; that the benefit of the interruption inured to the Pacific Gas & Electric Company; that the mere courtesy extended to the Pacific Gas & Electric Company contemplated that the gas company would restore the service as soon as possible; that respondent was on the premises for the purposes of his employer and not for the benefit of appellant company. The basic premise upon which these arguments is predicated is unsound. The Pacific Gas & Electric Company had the contractual right to temporarily shut off the gas from appellant company's plant. By its application for service, appellant company agreed to be bound by rules on file with the Railroad Commission. These rules became part of the contract between the Pacific

Gas & Electric Company and the appellant corporation. (*Pacific Brick Co.* v. *Southern Cal. Edison Co.*, 46 Cal. App. (2d) 538 [116 P. (2d) 131]; *Riaboff* v. *Pacific T. & T. Co.*, 39 Cal. App. (2d) (Supp.) 775 [102 P. (2d) 465].) ▮▮▮ By such rules, above referred to, the Pacific Gas & Electric Company had the right to suspend service temporarily while making improvements to its system, and for this purpose it was given the right of ingress to and egress from the consumer's premises. There can be no doubt, therefore, that the Pacific Gas & Electric Company had the contractual right to shut off the gas from appellant company's plant even though that company objected. The Pacific Gas & Electric Company had a legal duty to turn the gas on as soon as possible (which duty it performed), but it was under no legal duty to relight or adjust the heaters. When the Pacific Gas & Electric Company promised to relight the heaters it was merely agreeing to perform a courtesy service for appellant company. It follows, therefore, that respondent was not on the premises solely for his own or his employer's purposes. To say the least, his purpose was one of common interest and mutual benefit to the occupant and his employer. Under such circumstances, respondent was an invitee.

▮▮▮ Appellants next urge that even if it be held that respondent entered the premises as an invitee, at the time of the accident he was a mere licensee, for the alleged reason that he exceeded the scope of the invitation in using the tram rail and the conductor bar for support. In this connection, appellants rely on the rule that where one uses appliances on the premises not intended for the use of visitors, or puts appliances to a use not intended, no liability exists. (*Scott* v. *George A. Fuller Co.*, 41 Cal. App. (2d) 501 [107 P. (2d) 55]; *Clyde* v. *Mitchell*, 14 Cal. App. (2d) 365 [58 P. (2d) 205].) That rule can have no application to this case for obvious reasons. Respondent was using the tram rail as a support in furtherance of his employment. Whether he used the rail for a reasonable purpose was a question of fact for the jury. In *Christy* v. *Ulrich*, 113 Cal. App. 338 [298 Pac. 135], the contention was made that the plaintiff, a state employee whose duty it was to inspect the construction of a state highway bridge, had exceeded the scope of his invitation, because at the time he was injured he was voluntarily carrying a tool to a workman over the main runway. His proper duties required the use of the runway. The court held

that the plaintiff was an invitee and that the fact that at the moment of the accident he was carrying a tool to a workman did not change his status because this was in aid of his duties. (See, also, *Skoglund* v. *Moore Dry-Dock Co.*, 11 Cal. App. (2d) 287 [53 P. (2d) 1001].)

Once it is determined that respondent was an invitee, the jury was justified in finding that appellants were guilty of negligence proximately causing the injury. The jury could have found that the location of the heater in such close proximity to the tram rail and the conductor bar constituted a hidden danger known to appellants but not known to respondent, and that, under the circumstances, they were under a duty to warn respondent. (*Dobbie* v. *Pacific Gas & Electric Co.*, 95 Cal. App. 781 [273 Pac. 630]; *Martin* v. *Fox W. C. Theatres Corp.*, 41 Cal. App. (2d) 925 [108 P. (2d) 29].) The jury could have found that, under the circumstances, appellants were negligent in failing to have warning signs or guard rails to protect persons in the position of respondent from being injured. The law is clear that where there are reasonable grounds to apprehend that invitees may come into contact with electricity in pursuit of their calling, reasonable care requires that they be warned or the wires guarded. (*Stanley* v. *Lander*, 3 Cal. App. (2d) 284 [39 P. (2d) 225]; *Anderson* v. *Southern Cal. Edison Co.*, 77 Cal. App. 328 [246 Pac. 559]; *Monroe* v. *San Joaquin L. & P. Corp.*, 42 Cal. App. (2d) 641 [109 P. (2d) 720].) Either theory supports the judgment.

Appellants argue at length that the evidence shows that respondent, as a matter of law, was guilty of contributory negligence that proximately contributed to his injury. From the testimony above recited, it seems clear to us that these were questions of fact for the jury. Appellants point to respondent's testimony that he knew he was upon the premises of a busy manufacturing plant; that he had previously been in plants where there was overhead electric equipment; that he knew what electrical insulators and hoists were; that, although he looked around after he had ascended the ladder, he did not see the insulators or the electric hoist; that the insulators used to attach the conductor bar to the tram rail were of a peculiar construction; that he had never seen such insulators before; that he did not inquire whether there were any hazards connected with the work. There was also read to respondent certain portions of a rule book furnished by the

Pacific Gas & Electric Company to all of its employees. These rules required that such employees make proper use of rubber gloves furnished by the company; that an employee while standing on a ladder must not lean to one side while working unless the ladder is secured; that the ladder must be placed directly in front of the work; that an employee must not touch exposed ungrounded lines unless he is insulated; that electrical equipment must always be considered as energized unless positively known to be dead; that a gas line must not be opened where there is an electric motor running, or where there is other sparking equipment, without first turning off the current; that a taper must be used to light pilot lights of automatic appliances. None of these factors determine, as a matter of law, that respondent was guilty of contributory negligence proximately causing his injury. So far as the rules are concerned, respondent testified that he was only required to be familiar and abide by the rules relating to workers in the gas department. Rubber gloves were not furnished employees in that department. Some of the other rules referred to obviously had no relation to such employees. The rules prohibiting the touching of live equipment and requiring all electrical equipment to be treated as energized unless the contrary were known could only have application to apparatus known to carry electric current. Moreover, the test to be applied to respondent is whether he exercised reasonable care. The rules of his employer are only important insofar as they embody rules of reasonable care. If they imposed a standard of care higher than that required by law they cannot inure to the benefit of appellants. Respondent testified that he did not know that the object upon which he rested his hand was a conductor; that it looked like a water pipe or gas line. An examination of the pictures introduced in evidence shows that the jury was justified in concluding that a reasonable examination would not have indicated the danger. From all the evidence it is apparent that, so far as the issue of contributory negligence is concerned, reasonable minds might differ on whether respondent exercised reasonable care. Since this is so, the jury's determination is conclusive. (*Christy* v. *Ulrich, supra; Skoglund* v. *Moore Dry-Dock Co., supra; DeGraf* v. *Anglo California Nat. Bank,* 14 Cal. (2d) 87 [92 P. (2d) 899] ; *Parker* v. *Manchester Hotel Co.,* 29 Cal. App. (2d) 446 [85 P. (2d) 152].)

The appellants next urge that prejudicial error was

committed in denying appellants' motion to strike the testimony of respondent's witness Simonson. This witness, an electrical engineer, over the objection of appellants, was allowed to testify, in answer to a hypothetical question based on the facts of this case, that reasonable care required that a conductor placed in a location such as the one here involved should be guarded to protect persons working nearby. On direct examination he testified that there was a standard of care among electrical engineers, independently of the rules of the Industrial Accident Commission, that required guards to be placed around conductors such as the one that injured respondent. On cross-examination he stated that his opinion, in this regard, was partially based on certain rules of the Industrial Accident Commission requiring guards in such cases. On redirect, the witness stated that, independently of the compensation commission rules, electrical engineers have a standard of care that requires electric conductors to be guarded. Appellants' main objection to this witness' testimony is that the orders of the Industrial Accident Commission were inadmissible in this case either because there is no evidence of service of such orders on appellant company (*Schmidt* v. *Pursell,* 47 Cal. App. 440 [190 Pac. 846] ; *Brumhall* v. *Sutherland,* 110 Cal. App. 10 [293 Pac. 672]) or because such orders are not intended to apply to actions other than those between employer and employee (*Hayden* v. *Paramount Productions, Inc.,* 33 Cal. App. (2d) 287 [91 P. (2d) 231] ; see, also, § 6313, Labor Code). Of course, no such orders were here introduced. Appellants urge, however, that, through the use of an expert, respondent has accomplished indirectly what he could not have done directly. It is no doubt the law, as urged by appellants, that where an expert witness bases his opinion entirely upon incompetent matter, or where it is shown that such incompetent matter is the chief element upon which the opinion is predicated, such opinion should be rejected altogether. (*San Diego Land etc. Co.* v. *Neale,* 88 Cal. 50 [25 Pac. 977, 11 L. R. A. 604].) But that argument has no application to the facts of this case. The opinion of this expert was not solely predicated on the rules of the Industrial Accident Commission, nor were those rules the basic premise upon which his opinion was predicated. A fair reading of his testimony discloses that the standard testified to by him was one adopted by electrical engineers independently of the rules of the commission. The mere fact that his opinion was partially based on inadmissible

sources did not affect the admissibility of his opinion. In such case "The expert's testimony, though based on knowledge gained from inadmissible sources, is entitled to credit because of the added sanction of his general experience." (*Hammond L. Co.* v. *County of Los Angeles,* 104 Cal. App. 235, 248 [285 Pac. 896] ; see, also, *Betts* v. *Southern Cal. etc. Exchange,* 144 Cal. 402 [77 Pac. 993] ; *People* v. *Marblehead Land Co.,* 82 Cal. App. 289 [255 Pac. 553] ; *Fishel* v. *F. M. Ball & Co., Inc.,* 83 Cal. App. 128 [256 Pac. 493] ; *Glantz* v. *Freedman,* 100 Cal. App. 611 [280 Pac. 704].)

██ The approved standard of maintaining electric conduits in industrial plants is not a matter of common knowledge, and therefore the testimony of an expert was admissible as an aid to the jury on that question.

██ Appellants also object to the refusal of the trial court to instruct the jury, as requested by them that "the rules of the Pacific Gas & Electric Company and application of defendant Bates Valve Bag Corporation for gas and electric services, offered in evidence herein do not, standing by themselves, place plaintiff in any more favored status than that of a licensee. In other words, said rules and application for service do not, taken by themselves, confer upon plaintiff the status of an invitee."

Appellants concede that the jury was fully and properly instructed on the distinctions between an invitee and licensee, but urge that the above instruction was also necessary to clarify that issue. While standing alone such rules might not make the respondent an invitee, there can be no doubt, for reasons already stated, that such rules were part of the contract of the consumer, were admissible, and if the jury believed respondent visited appellant company's premises pursuant to that contract (which is the only reasonable inference) then such rules could properly be considered in determining respondent's status. The instruction offered would have been misleading and was properly refused.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 10, 1942.